## WILLIAMS *vs.* THE BANK OF MICHIGAN.

The government of the *territory of Michigan* had power in 1817, under the law organizing the territory to *incorporate a banking company.* N. B. This was the unanimous decision of the court, although *Chancellor* WALWORTH questioned the power, and based his opinion principally upon the *acquiescence* of the congress of the United States.

*It seems* that the power given by the ordinance of congress of 13th July, 1787, to the *territorial governments*, to adopt the laws of the *original states*, extends to the adoption of the laws of *any state in the union*, in existence at the time of such adoption.

In a suit by a *corporation*, on a promissory note, if the general issue be pleaded, the plaintiffs must shew that they are a body corporate.

A *corporation* may be proved by an exemplification or admission of the act of incorporation, and acts of *user* under it; and the acts and admissions of a party, such as serving as president of the corporation, and giving a note to it in its corporate name, is *prima facie* evidence of *user.*

The fact of a contract being made with a *joint stock company*, designating it as an incorporated company, e. g. " The President, Directors and Company of the Bank of Michigan," does not dispense with proof that the company is a body corporate, unless in the contract itself it is distinctly stated that the company is an *incorporated company.*

*It seems,* however, that after a judgment in favor of such company, in an action on the judgment, or in a suit on the recognizance of bail, either in the original action, or in error, the defendants would be estopped from denying the existence of the corporation.

ERROR from the supreme court. The bank of Michigan sued Williams in the supreme court, as the *maker* of a promissory note for $2755,51, bearing date 28th June, 1825, payable to "The President, Directors and Company of the Bank of Michigan," on demand. At the circuit the note declared on was produced, the making of which was admitted; on it was an endorsement under date of 10th July, 1826, stating that $170,87, the interest thereof up to that time, had been received. An admission of the defendant that he had been president of the Bank of Michigan was proved, and it was then agreed that a verdict should be entered for the plaintiffs for the sum of $3031,$\frac{7}{100}$, subject to the opinion of the supreme court on a case to be made, and that the acts, laws and ordinances of the *congress* of the United States, relating to the territory of Michigan, and the laws of the territory, including the act of law purporting to have been passed 19th December, 1817, entitled "An act to incorporate the stockholders of the bank of Michigan," should be considered as forming part of the case, and might be referred to on the argument of the case as contained in the printed volume of the laws of the territory in ordinary use; liberty being given to either party to turn the case into a bill of exceptions or special verdict. The case was argued in the supreme court, and judgment given for the plaintiffs. For a *statement* of the case, the *arguments* of counsel and the *opinion* of the supreme court, see 5 Wendell, 478 to 490. The cause here was argued by

*H. Bleecker, and A. Van Vechten,* for the plaintiff in error.

*J. Hoyt, and J. C. Spencer,* for the defendants in error.

The following opinions were delivered:

By the CHANCELLOR. There is no doubt that by the common law in England, and the settled law of this state, if a suit

is brought by a corporation, they must, on the general issue pleaded, show that they are a corporation; *Jackson* v. *Plumbe* 8 Johns. R. 378; *Dictum of Hobart. Ch. J. in report of Norris* v. *Staps*, Hob. Rep. 211; *The Dutch West India Company* v. *Van Moses*, 1 Strange, 612; 2 Lord Raym, 1535, note, S. C. but it is insisted by the counsel for the bank in this case that as the note was given by Williams directly to the company by their corporate name, he is estopped from denying that they are a corporation. To support this position, a *dictum* of a former chief justice of the supreme court is cited. *The Dutchess Cotton Manufactory* v. *Davis*, 14 Johns. Rep. 245. The language attributed to Ch. J. Thompson, by the reporter, certainly does support such a principle, but it is evident it does not express the idea that the chief justice intended to convey, for he proceeds to say, that upon the general issue pleaded by the defendant, the plaintiffs must prove they are a corporation. The case of *Henriques* v. *The Dutch West India Company*, 2 Lord Raym, 1532, which he cites, establishes no such principle. The question which arose both in that case and in the case of *The Dutchess Cotton Manufactory* v. *Davis*, was as to the necessity of averring in the declaration, that the plaintiffs were a corporate body. The case of the Dutch company was a *scire facias* on a recognizance of bail; and the only plea in the case was *nul tiel record*, as to the recognizance. The question whether the plaintiffs were a corporation was raised on the general issue pleaded in the original suit against Van Moses; and the reporter says that Lord King, before whom that cause was tried, told him that, upon the trial, he made the plaintiffs give in evidence the proper instruments whereby they were effectually created a corporation by the laws of Holland, notwithstanding the contract was made directly with the company, on a loan of money from them. Although the question of estoppel could not arise under the plea which was actually put in to the *scire facias* against the bail, yet it is evident they would be estopped in such a case from pleading that the plaintiffs were not a corporation. That fact had been established by the verdict, in the original suit against the principal, and the *scire facias* was a mere continuance of the.

proceeding against the bail, who were also bound by the judg-ment in the original suit, as privies. So in this case, if the company succeed in sustaining their judgment, the defendant, in any proceeding thereon, will be estopped from denying that they were a corporation at the time of giving the note, and that the time of entering the judgment of affirmance; and the bail in error, in a suit or *scire facias* on their recognizance, will as privies, be estopped from pleading that the plaintiffs were not a corporation.

It is well known, however, that there are and have been many joint stock, and even banking companies which are mere partnerships, as to every person except their own stockholders they never having been legally incorporated. Whatever name such a company may assume and use, in the transaction of its business, it is a partnership, and not a corporate designation; and every suit, upon a contract with the company, must be brought in the names of the several persons composing the firm. A contract made with the company by that name, is neither an admission or any evidence whatever that it is enti-tled to sue by that name as a corporation aggregate; and the fact that the party making the contract has once acted as pre-sident, or other officer of the company, is not evidence that it was ever incorporated. If the contract, on its face, stated the fact that the company was duly incorporated, or that such was its corporate name, it probably would be sufficient evidence of the fact to authorize a recovery against the person making such admission; and unless he could show some mistake, or that the contract was in violation of some positive law restain-ing such contract, the admission would probably be conclusive. Independent of the written laws of Michigan, I can see noth-ing, therefore, in the testimony in this case which could au-thorize a recovery of the note given to " The President, Direc-tors and Company of the Bank of Michigan," on the ground that the name given to the payee was a corporate, and not a mere partnership name.

Having arrived at the conclusion that the plaintiffs in the court below were bound to show upon the trial that they were incorporated, and that the giving a note to them by a particu-lar name, and the admission of the defendant that he had

been president of the bank, was not sufficient to show the company was incorporated, it becomes necessary to inquire into the validity of the charter granted in December, 1817; and I confess that after a careful investigation of the subject, I have great doubts whether the framers of the ordinance of July, 1787, contemplated the exercise of such a power by the governor and judges, under the first grade of territorial government. At the time when this ordinance was adopted, the territory designated in it, which now contains a million of inhabitants, was for the most part an entire wilderness. The only settlers were at the inconsiderable Canadian French villages of Kaskaskia, Cahokia, Peora, Vincennes, Mackina and Detroit, with perhaps two or three others on the American bottom, and in the neighborhood of the lakes. For this scattered and sparse population, separated in some instances many hundred miles from each other, a few simple regulations which had been sanctioned by the people of the original states in their representative assemblies were deemed sufficient, in addition to the rules of inheritance and the general laws of property, contained in the ordinance itself, which were adopted by Mr. Dane, who prepared that ordinance from the laws of Massachusetts. Ample provision was made for general legislation as soon as the district was raised to the second grade of territorial government, which was to take place as soon as the number of inhabitants amounted to five thousand. The learned projector of this ordinance, in speaking of its adoption by congress, admits it was intentionally so framed as to furnish a strong inducement to the inhabitants to throw off the yoke of territorial dependence at a proper time, and to ask for admission into the union as an independent state, 7 Dane's Abr. 444; and it is not improbable that the law making power under the oligarchy, was intentionally restricted in such a manner also as, in the language of Mr. Dane, "to create some real motives" to induce the people to abolish that form of government as soon as convenient, and to adopt that of a representative democracy, which was so much more in accordance with the spirit of our institutions. Such indeed was its practical effect in the original territory, and in the new territories of Indiana and Illinois; and if the union of executive, judicial and legis-

ALBANY,
Dec. 1831.

Williams
v.
Bank of Michigan.

lative powers in a few individuals has been long acquiesced in by the citizens of Michigan, it is to be attributed rather to their confidence in the ability and integrity of the amiable and excellent man who has performed the duties of territorial governor for the last eighteen years, than to any thing which was desirable in the form of the government which he administered.

The ordinance authorises the governor and judges to adopt and publish in the territory such laws of the original states, criminal and civil, as may be necessary and suited to the circumstances of the district; and it is insisted that banks have been incorporated in the original states, and therefore that they had the right to adopt the principle and incorporate this company. The difficulty, however, which suggested itself to my mind, arose from the fact, that the power to create corporations with franchises, which belong only to the sovereign of the territory, does not appear strictly to belong to the law making power. Under the common law of England it belonged to the king as a branch of the royal prerogative. Although parliament sometimes granted acts of incorporation, it was generally in those cases where some extraordinary powers and privileges were wanting, not within the reach of the king's prerogative. Even then the legal rule held good, that "no corporation is valid without the royal sanction;" for the assent of the king is necessary to every parliamentary act. In this country the people of the states, the only legitimate sovereigns, have succeeded to the prerogatives which formerly belonged to the crown. Statutory incorporations here, are legislative grants by the people through their representatives, rather than laws, in the ordinary sense of the term. Notwithstanding these serious objections to the validity of this act of incorporation, we cannot shut our eyes upon the fact that it has been in operation within the territory nearly fourteen years, without having been annulled or disapproved of by congress; although they had abrogated an act incorporating the Bank of Detroit, adopted at a much earlier period of the territorial government. The judges too, who passed upon the validity of this act in their legislative capacity, also formed the highest judicial tribunal in the territory. There is an obvious

inconvenience and many practical objections to a state court adopting a different construction of such a power, from that which exists in the territory where the institution is located, and when the decision of the state tribunal in a particular case will not alter the decisions of the territorial courts on the same subject, or be considered there as of binding authority. Besides, the plaintiff in error has himself given a practical construction to the ordinance of 1787, by exercising banking powers as one of the officers of this institution notwithstanding the restraining law adopted in the territory in 1815; he therefore cannot complain if we leave him to the construction which was adopted by the legislative power of Michigan, as well as by himself. I think, after such a lapse of time, and in a case of doubt, the safer course is to leave that construction undisturbed.

I shall therefore, though with some hesitation, vote for an affirmance of the judgment of the supreme court.

By Mr. Senator ALLEN. The plaintiff in error objects to the judgment of the court below, on the grounds that there was no power in the government of Michigan in December, 1817, to incorporate a banking company, and that there was no evidence that the bank of Michigan was duly incorporated.

By the ordinance of congress, passed in 1787, the governor and judges of the territory nothwest of the river Ohio, were authorized to adopt and publish in the district such laws of the original states, criminal and civil, as might be necessary and best suited to the circumstances of the district, and report them to congress from time to time, &c. In January, 1805, Michigan was by an act of congress erected into a separate territory, with a government *in all respects similar* to that provided by congress for the government of the territory northwest of the river Ohio; and the inabitants thereof were to be entitled to, and to enjoy all and singular the rights, privileges and advantages granted and secured to the people of the territory of the United States northwest of the river Ohio. It appears therefore that similar powers, privileges and immunities possessed by the inhabitants of the territory of the United States northwest of the river Ohio, under the act of congress of 1787, were by the

act of 1805 vested in, and conferred on the people and inhabitants of the territory of Michigan. It follows that the governor and judges of the territory of Michigan possessed the power and authority in 1805 to adopt such laws of the original states, as in their judgment were necessary and suitable to the circumstances of the district, to the same extent, and under the same authority, that such power was possessed in 1787 by the governor and judges of the territory of the United States northwest of the river Ohio. That the original states had incorporated several banking institutions previous to 1805, is a fact not to be denied; and as in 1805, the governor and judges of the territory of Michigan had full authority to adopt the laws of the original states, it follows that they could legally adopt and incorporate a banking institution.

It was contended by the counsel for the plaintiff in error, however, that, admitting the right to adopt the laws of the original states, they must be adopted *verbatim*. This could not have been the intention of congress, because, in most cases, it would be absurd in the extreme. An act establishing a superior court in the city of New-York, would hardly be applicable, word for word, for the purpose of establishing a similar court in the city of Detroit; and this unnecessary in-·congruity would manifestly appear in all the acts of the government, were they adopted verbatim from the laws of the original states. The spirit of the ordinances of congress evidently is, that *the subject of enactment by the original states* must be adopted, and not that a law of New-York, or any other of the original states, should be adopted word for word, without alteration; and it is upon this principle, and in conformity with the spirit of the ordinance, as appears from the several enactments exhibited in the error book, that the government of Michigan has proceeded. We find that an act was passed concerning *debtors* adopted from the laws of four of the states; an act for punishing crimes, also adopted from four states; an act for the establishing a university, adopted from three of the states, &c. In these instances, therefore, as well as in others, so much of the subject matter of the laws of the several states as were suitable to the circumstances of the people of Michigan, are combined in one act, and adopted by the government.

That this mode of enacting the necessary laws for the territory was consonant with the intention and spirit or the ordinance of congress, is evident from the fact that none of the laws adopted by the territory, except in one instance, have been disapproved by congress, agreeably to the power reserved by the ordinance of 1787.

It was also insisted by the counsel for the plaintiff in error, that the acts of the original states, which the government of the territory of Michigan were authorized to adopt, were such only as were in force in 1787. That this is not a sound construction, I am well persuaded; but, if we admit its correctness, it has not been denied, that previous to 1787, *there was* at least one banking institution (the Bank of North America,) incorporated by an *original* state; and as the act incorporating the Bank of Michigan is an ordinary bank charter, and in accordance with the principles of the act alluded to, it was one of those acts of the original states, *the subject matter of which* the government of Michigan was authorized to adopt; and consequently the act chartering the Bank of Michigan is a valid and legal act of incorporation.

It was contended, however, that the judgment of the court below was given without evidence that the president, directors and company of the Bank of Michigan were duly constituted a body corporate, capable of suing and being sued, and by law entitled to demand of the defendant below the money mentioned in the note set forth in the record and proceedings in the case. That the plaintiffs were bound to shew themselves a corporation is admitted. In the case of *The Utica Insurance Company* v. *Tillman,* 1 Wendell, 555, it was held that a corporation was sufficiently proved by the protion of an exemplified copy of the act of incorporation, and evidence of *user* under it. The production of this document, however, appears to have been waived by the defendant in the court below; for we are informed by the error book, that by the mutual agreement of the plaintiffs and defendant, all the acts set forth, as well those passed by the congress of the United States, as by the governor and judges, and by the legislative authority of the territory of Michigan, are to form a part of the verdict of the jury, and are to have the same force, effect

ALBANY,
Dec. 1831.

Williams
v.
Bank of Mich-
igan.

and validity as if they were respectively incorporated at full length in the verdict, and are to be used and transcribed from books in ordinary use in courts of justice. The act, therefore, to incorporate the stockholders of the bank of Michigan by mutual agreement of the parties, forms a part of the case as brought up to this court, and authorizes the inference, that on the trial of the cause in the court below, the act was admitted by the defendant as duly proved, and consequently that the plaintiffs were capable of suing and being sued, and in possession of all the attributes of a body politic and corporate. In the case of *The Dutchess Cotton Manufactory* v. *Davis*, 14 Johns R. 238, it was held that the defendant, having undertaken to enter into a contract with the plaintiffs in their corporate name, he thereby admits them to be duly constituted a body politic and corporate under such name. The contract entered into with the bank by the defendant below, wherein he promises to pay, on demand, to the president, directors and company of the Bank of Michigan, $2755,51, for value received, with interest, brings this case, in my opinion, substantially within the above rule; and the defendant has therefore precluded himself from objecting to the validity of the corporation. By the act of incorporation also, and the evidence produced on the trial of the cause, it appears that the defendant was one of the original applicants for the charter, a commissioner for receiving subscriptions to the stock, an original director of the bank, and of course an original stockholder, and that he was also chosen president of the institution. He has therefore virtually admitted, by his own acts, that there was a bank; and while he admits the fact, he also necessarily admits that it was legally constituted. Shall he be permitted now to deny the existence of an institution which, by his own acts, he was holding out to the public as a corporation legally constituted; by sanctioning the acts of the corporation, signing and issuing their notes as money, and inducing the people to receive them as such; drawing and signing his own note, payable to the company with interest, and actually making payment of such interest? In my view, neither reason nor law will sanction such denial. That the law incorporating the bank was perfectly valid, may be inferred from the fact

that it has not been disapproved of by congress, or repealed by the legislative council of the territory; on the contrary, it appears that in 1825, eight years after the chartering of the bank, the governor and council gave a sanction to the validity of the act, by appointing the cashier of the institution their agent for the receipt of the contingent fund appropriated by congress for the use of the territory, and directed a payment to the bank for the incidental expenses of the session, previously advanced by the institution; all of which shows conclusively to my mind that the legality of the corporation was undisputed.

ALBANY,
Dec. 1831.

Williams
v.
Bank of Michigan.

I am of opinion, therefore, that the judgment of the court below was correct, and ought in all things to be affirmed.

By Mr. Senator BEARDSLEY. It appears from the error book, that on the 19th December, 1817, the governor and judges of the territory of Michigan passed or adopted an act incorporating the Bank of Michigan; that the plaintiff in error was one of the commissioners named in the act for receiving subscriptions and distributing the stock; and that he was afterwards one of the directors and president of the bank. The institution acquired public confidence, and for several years has been in successful operation under its charter; but if this defence can be sustained, it strikes at the vitality of its existence, and blasts the hopes, not only of the stockholders, but of the bill holders.

It would indeed be matter of regret, if those administering the law should find themselves constrained to sanction the doctrine of the plaintiff in error, that an individual may procure a banking charter, and under it become a stockholder, director and president, and thus, by his name and influence, give credit to the institution, and currency to its bills; and then, on becoming a debtor, set the institution at defiance, thereby impairing the ability of the bank to meet its engagements. Such injustice should not be sanctioned under the forms of law, unless the law clearly requires it at our hands.

The defence rests on the proposition, that the governor and judges of Michigan had no authority to pass the act of incorporation under which the parties have acted. Michigan was

ALBANY,
Dec. 1831.

Williams
v.
Bank of Mich-
igan.

erected into a territory on the 30th of June, 1805. The act of congress erecting the territory enacts, "that there shall be established within the said territory a government in all respects similar to that provided by the ordinance of congress, passed on the 13th day of July, 1787, for the government of the territory of the United States, north-west of the river Ohio, and by an act passed on the seventh of August, 1789, entitled an act to provide for the gnvernment of the territory north-west of the river Ohio; and the inhabitants thereof shall be entitled to and enjoy all and singular the rights, privileges and advantages granted and secured to the people of the territory of the U. States, north-west of the river Ohio, by the said ordinance." The act of congress of July 13th, 1787, (which was confirmed by the law of August 7th, 1789,) among other things, enacts, "That the governor and judges, or a majority of them, shall adopt and publish in the district such laws from the original states, criminal and civil, as may be necessary and best suited to the circumstances of the district, and report them to congress from time to time; which laws shall be in force in the district until the organization of the general assembly therein, unless disapproved of by congress; but afterwards, the legislature shall have authority to alter them as they shall think fit."

It is objected by the plaintiff in error, that as there were but few banks in the United States in 1787, congress could not have intended to authorise banking institutions in the north-western territory; and that incorporating banks implies a general power of legislation. It is very probable that the framers of the law of 1787 did not contemplate the creation of a bank; nor did the most vivid imagination foresee the vast increase of inhabitants, wealth and business which has sprung into existence north-west of the Ohio. Still there were banks in existence in several of the states previous to 1787—in Massachusetts, Pennsylvania and Delaware, and the Bank of North America, legalised by our own legislature in 1787. If the necessities or business of the territory should require a bank, it cannot, with propriety, be said that congress did not foresee

ALBANY,
Dec. 1831.

Williams
v.
Bank of Mich-
igan,

that such necessity might exist, and therefore did not autho-rize it. As a territorial government was about to be estab-lished, it is a fair inference that congress intended to confer ne-cessary legislative power on the governor and judges, subject to the limitation and restriction that the laws be adopted to should be taken from the laws of the original states, and sub-ject to the approval or disproval of congress. With this qualification, it appears to me that they were clothed with general powers of legislation ; and the great variety of laws of a general nature, passed or adopted, and which are set out in the case, go to fortify this construction. The legislative au-thority thus created by act of congress, have decided that a bank is necessary and suited to the circumstances of the dis-trict, and if the power is conceded, the expediency of the meas-ure is not to be called in question by the judicial tribunals of the country. In 1806 the governor and judges incorporated the Bank of Detroit, and the next year congress disapproved of it, and passed a law repealing the law of the territory. U. S. Laws, vol. 4, page 117. Congress has not in the pre-sent instance, as in 1807, passed a law repealing the present charter. The bank has been in operation for several years, and has been permitted by congress to go on without inter-ruption. This affords satisfactory evidence that the govern-ment of the United States does not disapprove of the charter, much less that it denies the authority of the governor and judges to pass such a law. Besides, the case shows that since the second grade of territorial government has been in exis-tence in the territory, the law in question has been recognized by the governor and legislative council. See Law of Michi-gan, 21st April, 1825.

It is not pretended that within the territory the banking charter has been adjudged invalid, or in any manner called in question ; and until congress or the local legislature disapproves of it, I feel constained to give it effect, unless other objections exist than bare want of power to adopt or pass the law.

It was contended on the argument, that in adopting laws for the territory, the governor and judges were to adopt from such laws as were in force at the time the ordinance of con-

gress, in 1787, was passed ; and that by *original* states, such states only were intended as were then in existence ; that in 1787 there were no laws in New-York or Massachusetts that would serve as prototypes for the act of incorporation, and that Ohio not being then in existence, was not an original state. It was therefore urged, that as the act of incorporation purported to have been adoped from the laws of New-York, Massachusetts and Ohio, it carried on its face evidence of want of authority, and that it was illegal and void.   This doctrine is too limited and illiberal to be admitted.   The ordinance of 1787 may be regarded as a remedial law ; and surely, when it is considered that the rights and property of a vast number of our fellow citizens have been, and still are, subject to the provisions of that law, the policy, interest and genius of the country require a liberal construction.

Where a law is ambiguous on its face, and will admit of different constructions, without doing violence to the terms of its enactment, it is right to adopt a liberal construction, and such an one as will best sustain the interest, and comport with the genius of our citizens, and the progressive improvement of the country.   It therefore appears to me, that we may, with propriety, say that any state that should be in existence at the time a law was to be adopted, was an *original* state, within the meaning of the act of congress ; and that any laws then in force might be adopted which the governor and judges should deem expedient.   If this proposition is correct, then there is no difficulty in the case ; as in 1817, all the principles contained in the charter might be found in the laws of New-York, Massachusetts and Ohio, from which they were adopted.   It cannot be pretended that the laws were to be adopted in *hæc verba,* but merely the substance of them was to be applied to the then existing state of the territory.

Having satisfied myself that there is nothing in the ordinance of 1787 which militates against the power of the governor and judges to incorporate a banking company, and they in their legislative capacity, having adjudged it expedient, and congress not having disapproved of it, I think the Bank of Mich-

igan is to be regarded by this court as a legally constituted corporate body. It has been created by an authority which to us may be regarded as an independent government, and the principles of comity will restrain us from too curiously scrutinizing the acts and proceedings of a government, over which we have no control. 4 Johns. C. R. 370. *Silver Lake Bank* v. *North*, 3 Dall. 392.

The jury, by their special verdict, find that the governor and judges passed or adopted the charter, and the act of congress is evidence that they were authorized to do so; these points being established, the only additional fact necessary to sustain an action is to show a *user* under the act of incorporation, in conformity to its provisions. This, as between the present parties, is sufficiently proved from their acts, if no other proof was afforded. The plaintiff in error was a director and president of the board of directors; this pre-supposes the stock to have been subscribed, and all requisites of the charter complied with up to the choice of directors and choice of president. He gave his note to the bank, payable to it in its corporate capacity, and by its corporate name; and more than a year afterwards he made a payment on the note. So far as user becomes a question, these facts surely ought to be conclusive on the defendant below, and estop him from denying its having been in operation. If I am wrong in saying it should be *conclusive* upon him, it is at least *prima facie* evidence, and that until rebutted, is sufficient. It is a corporation *de facto*, and binding upon the parties till set aside. 6 Cowen, 23.

A foreign corporation may sue in our courts; the authorities fully support this position, and it has not been controverted.

In coming to the conclusion that the governor and judges were authorized to incorporate the bank, it has appeared to me unnecessary to resort to the various acts of general legislation in the territorial governments which were cited on the argument; nor has it appeared to me necessary to review the cases, or to decide the questions so ably discussed by counsel whether the giving the note and other acts of the defendant below admitted the corporate rights of the plaintiffs, and estopped him from denying them. The other view of the case satisfies me that the judgment of the supreme court ought to be affirm-

ed, and in giving validity to the corporate rights of the bank, we only compel the plaintiff in error to do what is just in paying back the money, with interest and costs. The judgment should be affirmed.

By Mr. Senator SEWARD.   I concur in the opinion delivered by the *Chancellor* as to the following points :

It was incumbent upon the plaintifis below to prove affirmatively that they were a corporation, having power to make the contract on which the suit was brought, and to maintain their suit.   This fact may be proved by producing the act of incorporation, and proving acts of user under it.   The act of incorporation is made evidence by the special verdict ; the proof of the acts and confession of the defendant is *prima facie* sufficient evidence of *user*.   I concur also in opinion that the governor and legislative counsel of Michigan had competent power to create the corporation, and I therefore am of opinion that the judgment of the supreme court ought to be affirmed.   But I cannot concur in the opinion delivered by Senator ALLEN, that the defendant below is *estopped* by his acts and admissions proved, from controverting either the validity of the act of incorporation, or the fact of user under it.

By Mr. Senator SHERMAN.   The defence set up in this suit was not a denial that the defendant owed the money to the plaintiffs, but that they had no right to recover it in their corporate capacity, in which it was alleged they advanced it. The defendant put himself upon his strict and technical rights, and in order to ascertain what his rights are, two questions present themselves to my mind : *First*, did the government of the territory of Michigan in 1817 possess the power, and legally exercise the same, of passing the act incorporating the Bank of Michigan ?  *Second*, was the act of incorporation proved upon the trial of the cause in the court below ?

All the power possessed by the government of the Michigan territory is derived from the act of congress, referred to hereafter.   Territories have no reserved power as in the case of states admitted into the union ; but the authority of congress I take to be supreme and unlimited, unless made other-

wise by the cessions of the lands composing those territories. The constitution, fourth article, gives to congress the power of providing for the government of the territorial property belonging to the United States. In the cessions of the north-western territory, including Michigan, there are no reservations, except a saving to the free Canadian settlers of their rights of possession, and laws and customs; and these have been observed, in the act relating to Michigan, by securing to them their rights of property, and providing for the transmission of those rights to their heirs and devisees. Congress, by virtue of their power, in July, 1787, passed the ordinance for the government of the territory north-west of the Ohio, and subsequently empowered the governor and judges of Michigan, or a majority of them, to adopt and publish such laws of the original states, both criminal and civil, as might be necessary and best suited to the circumstances of the district, and report the same to congress from time to time, and that such laws should be in force, unless disapproved of by congress. This act was passed under the old confederation, but re-enacted by congress under the present constitution, by act passed the 7th August, 1789. From this act or ordinance the territory of Michigan derives its governmental powers; and the governor and judges being thus invested with limited legislative authority, did, on the 19th December, 1817, pass or adopt the act in question, establishing the bank of Michigan. It declares the stockholders to be a body corporate in fact and in name, by the name of "The President, Directors and Company of the Bank of Michigan," capable of suing and being sued in all courts and places, and to have continued succession until June, 1839. It consists of twenty-one sections, containing the ordinary banking powers, and concludes by saying the same are adopted from laws of three of the original states, viz. New-York, Massachusetts and Ohio.

The plaintiff in error objects and denies that the governor and judges, by virtue of the ordinance of congress, had the power to incorporate a bank; and if they had, the act should have been adopted entire from the laws of one state, and not parts or sections from the laws of several states; that

*ALBANY,
Dec. 1831.*

Williams
v.
Bank of Michigan.

they have no right to *enact* or make a new act, but can only *adopt* an act already made. A preliminary question arises, whether the judicial power of one state can entertain jurisdiction over, or decide upon the constitutionality of a law of a sister state or territory, as being contrary to the constitution of the state passing the law, or in other words, that a state has violated its own constitution in the exercise of legislative power. Here both parties to this controversy are citizens of the same territory where the act was passed and the contract made, and in consequence of the defendant being arrested in this state, the judiciary of this state are called on to decide the questions arising between them. Is it competent for the court to pronounce the *lex loci* a violation of the constitution or ordinance of that district? I think not. But independent of this question, as applying to the states of the union, this territory is in some particulars different. Congress has reserved the right of approving or disapproving of the acts of the territory, and having approved of the law in question, does it not present itself to us as clothed with a power paramount to any we can exercise? it may be considered the act of congress, declared through its agent. But were the territory viewed on the basis of an individual state of the union, I do not see what right this court, or any other court in this state, has to inquire into the constitutional powers of such other state. No question arises under our own constitution or that of the United States; and the states are, as respects us and each other, sovereign and independent, and their laws are to be viewed as valid, and their constitutionality as unquestionable as the laws of a foreign nation, where they are brought into consideration between parties who are citizens of such state, and in reference to contracts made in the same. I have found no adjudicated case directly on this point, but reasoning from analogy, the principle appears to be corroborated by a case decided in the supreme court of the United States, 3 Dall. R. 356, and 6 Cranch, 128, where the judges say: "We do not consider ourselves invested with the jurisdiction to decide that a state law is a violation of its own constitution, and will not entertain it where it is not connected with any question arising under the constitution of the United States." It not being necessary to

settle this point, from the view I have taken of this case, I will briefly examine the several questions which have been raised.

It was no doubt the intention of congress, by confining the government of the territory to the adoption of laws of the original states, to put them under all the limitations imposed on the original states, contained in the constitution of the U. States, without enumerating them; that the territory should exercise no greater legislative power, nor enact new laws that might admit of new and doubtful construction. If, then, the governor and judges of Michigan have not adopted a law, containing greater powers than is contained in the laws from whence it was taken, and it does not appear that they have, they are within the intentional limits of their charter. It is not, then, in my mind, very material whether two or three formal sections of this bank charter were taken from a different state from whence the main body of the act is taken; it is still *adopting*, according to the meaning I attach to the term. Much was said in argument about the meaning of the terms *adopt* and *enact*, and there is no doubt a difference. To enact, implies the creating anew a law which did not exist before; but *adopt*, no doubt implies the making that our own which was created by another, as the adoption of our statute laws of Great Britain, as they stood, by the colonial government. In this case, the bank charter was taken from acts in the statute books of the individual states, without any alteration of their meaning or import. The alteration of formal words and phrases, to adapt the law to local circumstances and persons, I do not consider material.

It was contended in argument that the act of congress of 1792, giving to the governor and judges of Michigan the power of repealing their laws when found inconvenient, was inconsistent with the idea of granting corporate rights, and an expression of the sense of congress on that subject. I do not so consider it, and I think it is susceptible of a different and more proper explanation. If such was the intention of congress, how can it be reconciled to the fact, that congress approved the act constituting the Bank of Michigan, for a certain number of years? But the ordinance of 1787, declares

that the laws so adopted by the governor and judges of Michigan, shall be in force in the district until the organization of the general assembly, thereby leaving them without the power of repealing such laws; and it was to remedy this omission or inconvenience that congress five years afterwards passed the law giving them the power to repeal; but this could not have been intended to effect vested rights, of property or corporate powers, which the governor and judges might think proper to grant. But suppose bank charters in that territory are taken subject to the right of repeal, as they are in this state by express words, it is not pretended that it ever has been repealed, and therefore it is a valid law while in existence. I am therefore of opinion on the first point, that the governor and judges did possess the power and legally exercised the same.

The *second* question: Was the act of incorporation proved upon the trial below? In the absence of all other circumstances, no doubt the plaintiffs would have been held to produce an authenticated copy of the act, with some proof of acceptance or *user* under it. But this evidence the defendant might admit on the trial, or he might waive it, or dispense with it, either in court or by acts tantamount to it out of court. This question arises on a collateral fact, and is not the *gist* of the action; and on such questions it is a principle that slighter evidence of the fact is sufficient. The facts in this case are, that the defendant gave the promissory note to the plaintiffs in their corporate capacity, whereby he recognized and acknowledged them as such; that he received from them the consideration money, and paid them interest money on the same. These facts, it was contended, constituted a dealing with them, and amounted to an admission of their incorporation; and that the defendant was estopped from denying that the plaintiffs were a corporation. The strict doctrine of estoppel, as defined by Lord Coke, is that the party is not only estopped from denying the fact, but his mouth is closed from shewing the contrary. This doctrine, the books say, is not to be favored, as the effect is to shut out investigation of the truth before the jury; and the principles of estoppel *in pais*, which is set up, as applicable to this case, has by recent decisions in many cases, and ought to be general, become relaxed into a

more reasonable principle; and is now considered as *prima facie* an estoppel from denying the fact alleged, until the contrary is proved. It amounts to a permission to the defendant to shew the contrary, and throws on him the *onus probandi*. This doctrine I think is applicable to the present case. The plaintiffs below shewed sufficient to amount to an estoppel *in pais;* but the defendant was not precluded from shewing the contrary. Suppose congress had annulled the law in question by disapproving it, it would have been competent for the defendant to have shewn that fact, although estopped from denying the act of incorporation. The following cases are in point and go to sustain the foregoing principle:

In the case of the Dutch West India Company, prosecuting in England, where the defendant having entered into a recognizance with them, by their chartered title, was held to have thereby admitted their existence as a company. 2 Ld. Raym. 1535. So in a suit by a collector of tolls, as agent for the company, the defendant objected that the plaintiff had not proved his authority under the statute; the court decided that the defendant having accounted to the plaintiff in the capacity of collector, and having received credit from him for tolls, he was not permitted to dispute his authority. 10 East, 104. So where an information was filed against a corporation by the solicitor general, in England, to enforce a forfeiture, the judge said, by filing it against them by their corporate title, you have admitted them to be an incorporation. 2 Kid. on Corp. 486. Where the plaintiff sued by his title of farmer general, the defendant having done business with him in that capacity, was held to be *estopped* in court from disputing the plaintiff's title and authority until he had proved the contrary. This is a case of a *prima facie estoppel.* 4 Bos. & Pul. 210. A parish certificate was held to be an *estoppel* against certain parishers, but enquirable into by others. 4 T. R. 254. A defendant by accepting a bill of exchange drawn on him by a copartnership firm, was held on the trial to have admitted the firm, by his acceptance. 4 Maule & Sel. 13. So the Dutchess Cotton Manufacturing Company, having prosecuted Davis in the supreme court of this state, on a stock note given to the compa-

ny, the defendant objected on the trial that they had not proved themselves to be an incorporated company. The court decided that the defendant having contracted with the plaintiffs in their corporate capacity, had admitted them to be a body corporate. 14 Johns. R. 238. The case in 6 Cowen, 25, and other cases, go to sustain to the same principle. I think the law as well as the merits of the case are with the plaintiffs on both questions. I am therefore of opinion that the judgment of the supreme court ought to be *affirmed*.

THE COURT being *unanimously* of opinion that the judgment of the supreme court ought to be affirmed, and it was accordingly *affirmed*.