## McFarlan *vs.* The Triton Insurance Company.

Where the plaintiffs claimed to be a corporation pursuant to an act incorporating all such persons as should thereafter become stockholders and appointing commissioners to receive subscriptions to the stock, and it appeared that all the stock had been taken, that directors and officers had been chosen, and a deposition to the effect that the capital stock had been paid in had been filed pursuant to the act, and the company had actually commenced business; *held* that the defendant was not entitled upon the issue of *nul tiel corporation* to show an irregularity in the manner of obtaining subscriptions, as that the commissioners had not met and that the subscribers did not pay down the amount required by the act.

In such a case it is enough for the plaintiffs to prove the charter and the user under it.

Where an insurance company sues upon a bond and there is no proof of the consideration upon which it was given, it will not be held to be illegal, but will be deemed to have been taken as an investment of its funds, or upon some other legitimate transaction.

Upon the question whether a corporation was properly organized, its own books are competent evidence in its favor.

. Error to New-York superior court. The Triton Insurance Company sued McFarlan in the court below, and declared on a bond executed by the defendant to the plaintiffs on the 9th of November, 1838, in the penal sum of $7000, conditioned to pay $3500 in one year, with interest at six per cent, payable semi-annually on the first days of January and July. The defendant pleaded, 1. *Non est factum;* 2. *Nul tiel corporation;* and 3. That the plaintiffs bring this action pretending and claiming to be a corporation aggregate by virtue of the act to incorporate the company, passed April 4, 1838, to be composed of the subscribers to the said company, which subscribers were not in being at the time of passing the act, but were to be composed of such persons only as might thereafter subscribe thereto according to the provisions of the act: that subscriptions to the capital stock authorized to be created by the act were not taken according to the provisions of the act, so as to entitle the persons pretending to be subscribers to the company, and their successors and assigns, to compose the said company; *wherefore* there was not any person authorized or lawfully compe

tent to take the bond in question; nor was there any such person at the commencement of this suit capable of instituting and prosecuting the same: but that certain persons using the name and title of the corporation authorized to be created in and by the act of the legislature did unjustly and illegally arrogate to themselves to compose said corporation, without the capital stock thereof having been taken according to the act, or other lawful warrant whatsoever ; and so the defendant says that the bond was and is void; concluding with a verification.

Replication to the second plea, that in pursuance of the act, &c. stock to the amount of $250,000 was subscribed for and taken by divers persons in said company; and that thereby, and by virtue of the act, and the user thereof, the plaintiffs became, and were at the time of the commencement of this suit, and still are a body politic and corporate, and as such entitled to commence and prosecute this suit; concluding with a verification. The defendant rejoined, taking issue on this replication, and concluded to the country.

To the third plea of the defendant there were four replications ; two of which were by way of estoppel; but the ground on which this court proceeded renders it unnecessary to set out the replications.

The defendant demurred separately to each of the four replications to the third plea ; the plaintiffs joined in demurrer ; and the court below rendered judgment for the plaintiffs on all the demurrers.

On the trial of the issues of fact, the bond, dated November 9, 1838, was proved and read in evidence. There was an endorsement of interest, $122,50, to the 9th of June, 1839, made by the secretary of the company on the 31st of July, 1839. The charter was granted 4th April, 1838, incorporating such persons as should thereafter be stockholders. The capital stock was to be $250,000, in shares of $50 each. (*Stat.* 1838, *p.* 110.) It appeared that there was an attempt to get the company in motion in July, 1838; but it failed because the capital stock had not then been fully taken. Evidence was given tending to show that the whole amount of the stock had been taken before

the 8th of November, 1838. On that day there was an election of twenty-five directors. The directors met on the same day and appointed a president, vice president and secretary; and the president and acting secretary made and filed the deposition required by the 13th section of the act of incorporation, that the whole of the capital stock had been paid in, or secured to be paid, according to the provisions of the act. The company thereupon commenced the business for which it was created, and continued such business for about two years.

It does not appear from the books of the company that the defendant was a subscriber for any of the stock. But on the 21st of November, 1838, 110 shares held by Joseph B. Nones as trustee were transferred to the defendant; and the defendant transferred that stock on the books of the company in two parcels to different individuals in January following. The defendant as trustee also transferred on the books of the company to different individuals, and at ten different times, several parcels of stock, amounting in all to 1339 shares. The first of these transfers was made November 13, 1838; and the last September 7, 1839. He also transferred 186 shares individually from the 8th of January, 1839, to the 8th of October following. Except the 110 shares above mentioned, and the 70 shares after mentioned, the books do not show how the defendant obtained the stock he held either as trustee or individually.

On the 30th of November, 1838, J. B. Nones, trustee, transferred to the defendant individually 70 shares of the stock, of the value at par of $3,500. The defendant insisted that the bond in question, and also a mortgage for the same amount were given to the company in payment for these 70 shares of stock; but whether such was the fact the witness did not know. On the 12th July, 1839, a dividend of four per cent was declared by the company. The defendant received a dividend of $174 on eighty-seven shares held by him as trustee: also a dividend of $140 on seventy shares which stood in his own name individually: and he also received a dividend of $100 on fifty shares standing in the name of Peter S. Ten-Broeck, to whom the defendant had previously transferred fifty

shares. These dividends were paid to the defendant on the 31st of July, 1839 ; and at that time he paid the interest on his bond and mortgage to the company.

On the 13th of August, 1839, the plaintiffs insured Chapin, Waterman & Folger $5000 on the schooner Harriet ; and a total loss followed. On the 30th of September, 1840, the company settled the loss with Chapin & Co., by assigning to them the bond in question, and the accompanying mortgage of the defendant. The defendant objected to receiving this evidence. He also made several objections to the books of the company as evidence. In all of those points he was overruled ; and he excepted.

The defendant offered to prove, in support of the second issue, that subscriptions to the capital stock of the company were not taken in accordance with the provisions of the act : that the commissioners named in the act never all met together ; and that no allotment of the stock was ever made by the commissioners : that allotments of stock were made by a part of the commissioners, less in number than a majority ; that no money was paid to the commissioners by the subscribers ; but that the commissioners gave credit ; and that there were other irregularities in relation to the subscriptions for stock. The evidence was rejected, and the defendant excepted.

The defendant asked the judge to instruct the jury to render a verdict for the defendant on the second issue, on the ground that the evidence did not sustain the issue for the plaintiffs : that there was no evidence that the commissioners to receive subscriptions ever met together, or acted at all in reference to their duties under the act : and further, that there was no evidence of subscriptions to the capital stock, or of the payment of any money at the time of subscribing. The judge refused so to instruct the jury ; and the defendant excepted. The judge submitted the cause to the jury, who found a verdict for the plaintiffs, on which judgment was rendered. The defendant brings error.

*E. Sandford,* for plaintiffs in error.

*C. P. Kirkland,* for defendant in error.

*By the Court,* BRONSON, Ch. J. Before examining the pleadings, it may be well to notice the facts of the case as they appeared on the trial, and the legal consequences resulting from those facts. We shall then be better prepared to appreciate the merits of the pleadings.

By the act incorporating the company, all such persons as should thereafter be stockholders were declared to be a body corporate. The capital stock was to be $250,000, divided into shares of $50 each. Nine commissioners were named to receive subscriptions to the capital stock; who were to open books for that purpose, giving notice of the time and place; and two dollars and fifty cents on each share was to be paid to the commissioners at the time of subscribing. (*Stat.* 1838, *p.* 110, §§ 2, 3, 8.) There was no express provision for an allotment or distribution of stock, should there be an excess of subscriptions. The company was not to commence business until the whole of the capital stock had been paid in, or secured to be paid, according to the act, and a deposition of that fact had been made by the president and secretary, and filed in the office of the clerk of the city and county of New-York. (§§ 11, 13.) There was no occasion for a distribution or allotment of the stock among the subscribers; for it is quite evident that there was no excess of subscriptions beyond the capital. The great difficulty was in getting the whole of the stock subscribed. The first effort for that purpose, which was made in July, 1838, failed; and it was not until November following that the capital was all taken. It is a matter of doubt upon the evidence, whether the commissioners for receiving subscriptions proceeded in the particular manner pointed out by the charter. But as the defendant offered to prove that they did not so proceed, that fact must be considered as established for all the purposes of this case. But there was evidence that the whole of the stock was taken before the company was organized.

Directors were then chosen, and officers appointed as the act directs; and the proof prescribed by the charter, (§ 13,) that the company was in a condition to commence business was duly made and filed. The company thereupon commenced its appropriate business, and continued it for about two years; and while so acting, the defendant gave the bond in question. Upon such proof, there could be no doubt but that the plaintiffs were a corporation, so far as third persons are concerned. It would have been enough for the plaintiffs to show the charter, and the user under it. ( *Utica Ins. Co.* v. *Tillman,* 1 *Wend.* 555; *Fire Department* v. *Kip,* 10 *id.* 266; *U. S. Bank* v. *Stearns,* 15 *id.* 314.) Going further, and showing that the defendant was himself one of the stockholders, and had received a dividend as such, could do no hurt, if it did no good.

It is unnecessary to inquire what may be the rights of the people in relation to this corporation; or as against the individuals who were concerned in getting it up, and setting it in motion. The defendant does not represent the sovereign power, and has nothing to do with the question whether the company should be dissolved. So long as the state does not interfere, the company may sue, or do any other lawful act, whatever sins may have been committed in bringing the body into existence.

In this view of the case, it is not necessary to consider the evidence which was given on the trial for the purpose of concluding the defendant by an estoppel *in pais* from denying the corporate existence of the plaintiffs. Nor need the arguments at the bar on that question be noticed. It is enough that the plaintiffs gave the usual proof that they were a corporation; and nothing was either proved, or offered to be proved, which could amount to an answer to that evidence.

On the merits, nothing like a defence, either legal or equitable, was made out. For aught that appears, the bond and mortgage may have been given for borrowed money; and taken by the company as an investment of its funds. But had it been proved that the securities were given for the seventy shares of stock which Nones transferred to the defendant, it would have furnished no reason why the defendant should not

pay. There is no evidence that he was defrauded, either by Nones or the plaintiffs. Indeed, there was not a shadow of defence, unless some advantage had been gained in preparing the pleadings. This leads to the consideration of that question.

The second plea was *nul tiel corporation ;* and nothing else. And although the replication to that plea, and the rejoinder which followed, say something about subscriptions for stock, the point of the issue was, corporation or no corporation. We have already seen that the plaintiffs proved themselves a corporation ; and they were consequently entitled to a verdict on that issue. Their right to a verdict on the issue made by the plea of *non est factum* has not been questioned.

The third plea is bad in substance. The point of the plea is, that the subscriptions to the capital stock of the company were not taken according to the provisions of the act. From that fact the pleader goes on to draw the inference, that there was no person competent to take the bond, or to sue; and finally, that the bond is void. But these are only matters of argument and inference. The only fact directly alleged in the plea, so that an issue could be taken upon it, is the one which has been mentioned. Now, if it be true that the subscriptions were not taken according to the provisions of the charter, that fact does not disprove the existence of the corporation, nor does it prove that the bond is void. Although the subscriptions were not properly taken, we have already seen that there was a good corporation, so far as third persons are concerned. And if there was a corporation, there is no question but that the bond was well taken, and the suit properly brought. Had subscriptions regularly taken been essential to the existence of the corporation, the plea would have contained a good argument against the capacity of the plaintiffs to take the bond, or to bring this suit. But as the corporation may exist without subscriptions regularly taken, the plea falls far short of a good argument against the action.

As the plea is bad, we need not examine the several replications to the plea. Whether the replications were good or not,

judgment was properly given against the party who committed the first fault in pleading.

The books of the corporation, in connection with other evidence, were properly received for the purpose of showing how the company was organized, and that it acted under the charter. And in reference to the manner in which the books had been prepared and kept, it is enough to say, that the credit due to the books was a question for the jury. It was not a ground for rejecting them altogether.

What has been said covers all the questions of any importance which the case presents. We see no error in the proceedings.

Judgment affirmed.