JONES and others *vs.* DANA, receiver of the Utica Insurance Company.

24 395
81h 254

Whatever a corporation would be obliged to prove, in an action brought by it, upon the issue of *nul tiel corporation*, may be controverted in an action brought against the corporation for relief based upon the corresponding allegation that no such corporation ever existed. Beyond this, the party contesting the corporate existence of the company cannot go.

All that a corporation is called upon to prove, to establish its existence, in a litigation with individuals dealing with it, is its charter, and user under it.

If a company has in form a charter authorizing it to act as a body corporate, and is in fact in the exercise of corporate powers at the time of taking a promissory note from an individual, it is, as to him and all third persons, a corporation *de facto*, and the validity of its corporate existence can only be tested by proceedings in behalf of the people.

Where parties have been induced to enter into contracts of insurance upon a fraudulent representation by the agents and officers of the company in regard to its capital, or pecuniary resources and ability, or any other matter which rightfully influenced them in the negotiation, they may be relieved against their contracts; but it not being necessary for their protection to go beyond that and declare the non-existence of the corporation, for any purpose, it should not be done.

If the plaintiffs, in such a case, have shown the corporation to be acting under a charter or an authority apparently valid, and really so unless impeached by something outside of the record evidence of its corporate existence and depending upon proof *aliunde*, and have thus furnished *prima facie* evidence of the incorporation, they cannot go behind that evidence, to show that the company was got up in fraud or mistake, or was irregularly brought into existence.

The determination of the commissioners appointed by the comptroller to make the necessary examination for that purpose, that an insurance company is in possession of the requisite capital and premium notes, is final, so far as the existence or non-existence of the corporation is concerned, until impeached and overthrown by a proceeding instituted by the people or their representatives, for that purpose.

The copies of the examiners' certificate and of the charter, when filed in the office of the county clerk, constitute the authority of the corporation to commence business and issue policies, and are the evidence of its right to act as a corporation. The courts, therefore, cannot, at the instance of third persons, go behind those acts and the prescribed evidence of them, for the purpose of determining as to the validity of the organization of the corporation.

A certificate of the examiners appointed by the comptroller, stating that the company has notes to the extent required by the 5th section of the statute, " given on application for insurance," is a substantial compliance with the 11th section of the statute.

THIS action was brought by the above plaintiffs on behalf of themselves and all other makers of premium notes in the Utica Insurance Company, to set aside an assessment made by the receiver of said company, and for other relief. The first cause of action in the complaint alleged the following facts. That the plaintiffs were makers of premium notes in the Utica Insurance Company, a company organized as a mutual insurance company under the general act of 1849; that the company was never organized pursuant to the statute and never became a corporation, in that the persons appointed by the comptroller under the 11th section of the act, gave a certificate that the said company had notes to the extent required by the 5th section, "*given on applications for insurance*," instead of certifying that they had the necessary amount of notes given *on engagements for insurance*, as required by the act; that such a certificate was not what was required by the act, and that the company could not become a corporation until a certificate in accordance with the act had been given. It was further alleged in this first cause of action that there was also fraud in the organization of the company; that those persons who gave the certificate were imposed upon and deceived, and that the certificate was not true; that the company was not, at the time of obtaining this certificate, in possession of the amount of notes required by the act, and that notes upon which no agreements had ever been made for insurance at all, and which were only made to be used for the occasion and then to be delivered back, were placed before the persons appointed to make the certificate, and the certificate was made on them, the persons appointed by the comptroller being thus deceived and imposed upon; that there were several thousand dollars, in amount, of this description of notes, and that they were, immediately after obtaining said certificate, delivered back to the persons who made them; that these acts were a fraud on the *bona fide* members of the company, and rendered the organization void and of no effect. The relief prayed for under this cause of action was that the court should declare the Utica Insurance Company was never organized, and that the premium notes are void. To this cause of action the defendant

demurred, and specified the following as the ground of demurrer : " That such pretended cause of action does not state facts sufficient to constitute a cause of action against this defendant, in that the pretended facts or the allegations setting up and alleging an illegal and fraudulent organization of said corporation are set up and alleged by and on behalf of the plaintiffs who are and were corporators in the said the Utica Insurance Company ; whereas the same cannot so be set up, nor could or would said pretended facts or said allegations form any defense to the payment of the notes in the complaint mentioned." The issue thus raised was submitted on written arguments.

*P. Gridley*, for the plaintiffs.

*W. B. Dana*, for the defendant.

W. F. ALLEN, J. The demurrer is only to the first cause or ground of action alleged in the complaint, which is, that the Utica Insurance Company never became a valid corporation for any of the purposes of the organization, by reason of an omission on the part of the associates to comply with the precedent requirements of the statute ; also by reason of an alleged fraud practiced upon the persons appointed by the comptroller to examine and ascertain whether the company was in possession of the engagements for insurance, to the full extent required by the act under which the company assumed to organize ; and also by reason of an alleged defect and insufficiency in the certificate required to be given by the examiners, preliminary to the commencement of business by the corporation. The relief asked upon this branch of the case is that it be adjudged that the association was never organized as a mutual insurance company, and that the premium notes given upon insurance effected with the company are therefore void. I assume, as it is assumed by the defendant in terms by his demurrer, and by the argument of his counsel, that the plaintiffs did insure with the Utica Insurance Company after the commencement of its business upon the plan of mutual insurance, and gave their notes for

the premiums of their respective insurances, in whole or in part, and that such notes, upon the appointment of the defendant as receiver of the effects of the company, passed into his hands and are now held by him, and claimed to be valid against the several makers, to the full amounts thereof; that the plaintiffs were, in virtue of their insurances, members and corporators of the mutual insurance company, if any such company was in existence.

It may be assumed that whatever the alleged corporation would have to prove, in an action brought by it, upon the issue of *nul tiel corporation*, may be controverted in an action brought against the corporation for relief based upon the corresponding allegation that no such corporation ever existed, and I am of opinion that beyond this the party contesting the corporate existence of the company cannot go. All that the corporation is called upon to prove, to establish its existence, in a litigation with individuals dealing with it, is its charter and user under it. (*McFarlan* v. *The Triton Ins. Co.* 4 *Denio*, 392. *Utica Ins. Co.* v. *Tilman*, 1 *Wend.* 555.) In *The Fire Department of N. Y.* v. *Kip*, 10 *Wend.* 266,) Savage, Ch. J., says: "That the plaintiffs are a corporation, was proved by the production of the statute declaring them to be so. This case, in that respect, is different from those corporations created by statute, and to become entitled to corporate powers by something to be done *in futuro*. In such cases we have held that at least proof of user under the charter shall be produced." (*See also U. S. Bank* v. *Stearns*, 12 *Wend.* 314; *Williams* v. *Bank of Michigan*, 7 *Wend.* 539.) There is a class of cases reported in actions brought against corporators upon subscriptions to the capital stock of the company, or agreements entered into preparatory and preliminary to the perfect incorporation or organization of the association, and which are therefore necessarily conditional, depending for their validity, upon the completion of the organization according to the terms of the statute incorporating or authorizing the incorporation of the company. This condition is implied, in the undertaking, and is as much a part of it as if expressed in terms. Such are the cases of

Jones v. Dana.

*Salem Milldam Corporation* v. *Ropes*, (6 *Pick*. 23; *S. C.* 9 *id*. 187;) *Central Turnpike Corporation* v. *Valentine*, (10 *id*. 142;) *Hamilton and Deansville Plank Road Co*. v. *Rice*, 7 *Barb*. 157.) There is a manifest distinction between actions of that character and those growing out of dealings with the corporation, after it should claim to be an incorporated company, and should be in the full exercise of corporate privileges, and brought by or against third persons, strangers to the corporation. It may be said of the relation which the insured in mutual insurance companies occupy in respect to such companies, that it is peculiar. While for some purposes they are corporators, and members entitled to the privileges and subject to the liabilities incident to that relation, for other purposes they are treated as third persons and strangers, and in actions by or against them, growing out of their dealings with the corporations, their rights and remedies would not be other or different than they would be were they not members or corporators for any purpose. There is nothing in the complaint from which I can infer that the notes, against which relief is sought, were made at and in order to the organization of the company; and whether, if they were, the result would be changed, I am not prepared to say. If the company had in form a charter authorizing it to act as a body corporate, and was in fact in the exercise of corporate powers at the time of its dealing with the plaintiffs, then it was, as to them and all third persons, a corporation *de facto*, and the validity of its corporate existence can only be tested by proceedings in behalf of the people. (*Per Senator Beardsley*, 7 *Wend*. 553. *Trustees of Vernon Society* v. *Hills*, 6 *Cowen*, 23.) In *Wood* v. *Jefferson Co. Bank*, (9 *id*. 194,) the act under which the plaintiff claimed to have become incorporated did not make any particular persons a corporation, but provided for subscriptions to the capital stock, and that before the issuing of notes, &c. by the bank, an affidavit that certain things had been done, should be made by the president and cashier, and filed, and the plaintiffs showed by their books the election of officers and the making and filing

of the affidavit, and it was held sufficient *prima facie* proof of the existence of the corporation.

It is said that fraud vitiates every, even the most solemn acts, and this is true as well of judicial and legislative acts, as acts *inter partes*. But it does not follow that every individual may assert fraud with a view to impeach the validity of every public act. So far as the fraud alleged affects the validity and legal existence of the supposed corporation, it concerns the public interests, as it relates to and affects the validity of the contract between the public and the associates, or the power which the latter claim to have acquired under the laws; and the people, or some one having by law authority to represent them, can alone investigate the fraud, and ask that the charter may be annulled or adjudged never to have had an existence. So far as the fraud alleged has wrought an injury to individuals, beyond that which has been sustained by the public at large, to that extent they may have relief. If parties have been induced to enter into contracts of insurance upon a fraudulent representation of the agents and officers of the company in regard to its capital or pecuniary resources and ability, or any other matter which righfully influenced them in the negotiation, they may be relieved against their contracts; but as it is not necessary for their protection to go beyond that and declare the non-existence, for any purpose, of the corporation, it should not be done. Perhaps the facts will warrant an amendment of the complaint, so as to entitle the plaintiffs to this relief. (*See per Bronson, Ch. J.,* 4 *Denio,* 397.)

The only remaining question is whether the plaintiffs have shown the Utica Insurance Company acting under a charter or an authority apparently valid, and really so, unless impeached by something outside of the record evidence of the corporate existence, and depending upon proof *aliunde*. If they have, and have thus furnished *prima facie* evidence of the incorporation, they cannot go behind that evidence to show that it was got up in fraud or mistake, or irregularly brought into existence. The decision of this question depends upon the true construction of the act under which the company undertook

to organize and became incorporated, and what acts shall be deemed conditions precedent to the complete organization of the company, and what shall be the evidence of the performance of these conditions.   The statute under which the company was formed, (1 *R. S. 4th ed.* 1279,) authorizes any number of persons not less than thirteen, to associate and form an incorporated company, for the purposes of health, life, marine or fire insurance; and section five of the act provides that no company formed and located out of the city of New York or county of Kings, for the purpose of doing the business of fire insurance on the mutual plan, shall commence business until agreements have been entered into for insurance, the premiums on which shall amount to $100,000, and the notes received therefor.   A previous section had authorized the filing, in the office of the secretary of state, of a declaration of intention on the part of the proposed corporators, and a copy of the proposed charter.   The extent to which the filing of the declaration and charter authorizes the associates to act as a company, is to enter into the conditional engagements for insurance, and to receive the premium notes to become valid and effectual as agreements upon the complete organization and incorporation of the association.   That act does not constitute the association a corporation.   The accumulation of the capital, by way of the premium notes, for the protection and security of the public, I cannot but think, is a condition precedent to the full organization of the company.   And the act does not stop here, but by § 11 it is required that an examination shall be made by the comptroller or a commissioner appointed by him, who shall certify, under oath, that the company is in possession of the capital and premium notes, &c. to the full extent required by the fifth section of the act; that copies of this certificate shall be filed with the secretary of state, whose duty it shall then be to furnish the corporation with a certified copy of the charter and certificates, which, upon being filed by them in the office of the clerk of the county in which their company is to be located, "shall be their authority to commence business and issue policies, and the same may be used for or against said

corporation." Without the certificate demanded by the 11th section, the corporation would have no authority to commence the business of insurance, notwithstanding the requirements of the fifth section had been complied with, and the design was to furnish record evidence of the corporate existence of the company. The charter, or the evidence of the grant of the franchise from the people to the corporators, is their charter on file, and the certificates of the examiners of their securities, or properly authenticated copies of them, which take the place of a special act of the legislature, incorporating them by name. It was not intended to leave the fact of the possession by the company of the requisite amount of premium notes, at the time of its organization, to be proved as a matter *in pais*, or to leave it an open question, liable to contestation by every individual having dealings with the corporation. The legislature provided a tribunal for the adjudication of this question, and its determination is final, so far as the existence or non-existence of the corporation is concerned, until impeached and overthrown by a proceeding instituted by the people or their representatives, for that purpose. The reason and policy of the law is very obvious, and without an express provision to that effect, such would be the legitimate effect and construction of the act, and such construction would be in harmony with the decisions of our courts upon analogous statutes. (*Jefferson Co. Bank* v. *Wood, supra. The Fire Department* v. *Kip. Caryl* v. *McElrath*, 3 *Sandf.* 176.) But the statute is explicit, and, as I read it, leaves no room for construction. It makes the copies of the charter and certificates filed in the office of the county clerk, "*the authority*" of the corporation to commence business and issue policies, and makes them evidence for or against the company; that is, evidence of the authority to act as a corporation. The legislature having said what act or acts shall give the company corporate powers, and what shall be the evidence of those acts, as well for as against the company, courts cannot, at the instance of third persons, go behind those acts and the prescribed evidence of them, for the purpose of determining the validity of the corporation and

Jones *v.* Dana.

make the decision, perhaps, depend upon some mistake or ac-. cident from which no one has received, or can receive, any injury. The certificate of the examiners is, I think, a substantial, although not a literal compliance with the act, and the law looks to the substance rather than the letter of the transaction. The fifth section requires "agreements" for insurance to be entered into, the premiums on which shall amount to a sum named, and the eleventh section requires the certificate to state that the company is in possession of "engagements" of insurance to the full extent required by the fifth section. The certificate is that the company had notes given on "application" for insurance, to the prescribed amount. The agreements or engagements mentioned in the statute, could be only inchoate and conditional, until the full organization of the company. They could not until then ripen into actual contracts of insurance. Either party could then be compelled specifically to perform the engagement or agreement. But an application accompanied by a note, for the proposed premium, accepted and acted upon by the company, is as valid an engagement or agreement as can be made. It is in words the very engagement or agreement contemplated by the act ; as that could only remain an application accepted by the company, to be acted upon and consummated at the option of either party, after the company should be authorized to issue policies. The terms must be construed in reference to the situation of the parties and the subject to which they relate.

The plaintiffs are not entitled to the relief asked upon the first cause of action, on the facts alleged, and the demurrer must be allowed, with leave to the plaintiffs to amend, on payment of costs.

[ONONDAGA SPECIAL TERM, February 12, 1855.  *W. F. Allen*, Justice.]