Baldwin, J.
This is an attempt, by motion, to defeat a judgment, for matter of abatement which occurred prior to the judgment. The defendants in the action resist the process of execution, chiefly on the ground that the charter by which the plaintiffs were incorporated expired at a certain period ; and that, period, it appears by their own shewing, was antecedent *66 to the rendition of the judgment. The defence, it will be seen, is not upon the merits, but against the merits, and supposes that the merits ought not to have been considered. And the only enquiry that need be made *n reSarc^ t0 this objection is, whether it comes in due time and by a proper mode of proceeding.
Matter of abatement either shews the action to be abatable, or that it is de facto abated. The former usually exists at the time of the suit; the latter for the most part occurs during its progress. The first must be pleaded in technical form, and at a proper stage of the cause. The last may be, but need not be, pleaded ; and when apparent or made known to the court, will be declared by its order at any time, in any stage of the suit. A few examples will illustrate this distinction, and serve to throw light upon the question before us.
Misnomer of the plaintiff or defendant in the writ and declaration must be pleaded in abatement; and if not so taken advantage of, the cause proceeds to judgment and execution, according to the erroneous designation of the party. The execution must strictly pursue the judgment, and be warranted by it; and therefore if a defendant be sued by a wrong name, and omit to take advantage of the misnomer, he may be arrested on a ca. sa. by such wrong name. 1 Archb. Pract. 304. Crawford v. Satchwell, 2 Str. 1218. The plaintiff in' that case brought trespass and false imprisonment by the Christian name of Archibald; the defendant justified under a capias ad satisfaciendum upon a judgment against Arthur, and averred that the plaintiff in the then action was the same person who was sued in the former by the name of Arthur: and on demurrer the court held it a good plea, the defendant having missed his time for taking advantage of the misnomer, which should have been by pleading it in the first action. And the court said that in the case of a bond given in a wrong name, the obligor must be sued by that wrong name, and the execution must pursue it.
*67 So also if a feme covert sue as a feme sole, and her coverture be not pleaded in abatement, she recovers judgment (if successful upon the merits) as a feme sole, which judgment may be enforced by process of execution in exact conformity with it. This proposition is manifestly correct upon principle, and the case of Wortley v. Rayner, 2 Doug. 637. goes beyond it. In that case a verdict- was found for the defendant on a plea of coverture, and a writ of fieri facias sued out for the costs, commanding the sheriff to levy and pay them to the defendant and her husband. A rule was granted to shew cause why the writ and proceedings thereon should not be set aside for irregularity; it being a maxim that a person not a party to the record cannot be benefited or charged by the process, without a scire facias. Cause was shewn ; but the rule was made absolute, the court being clearly of opinion that the proceedings were irregular: and Ashhurst justice said, the wife might have had process in her own name, because the plaintiff having declared against her as sole, he was concluded from denying it.
And to come nearer the present case, if the plaintiff be dead at the time of action brought, this can only be alleged by plea in abatement, and a judgment, if recovered against the defendant, is in the name of the dead plaintiff; and process of execution may be sued out and acted upon in his name.
In these and other instances that might be given of matter for which the writ is merely abatable, the defendant is liable to an estoppel not only by force of the judgment, but also by reason of his failure to object the false designation, or the disability, or the nonexistence of the plaintiff at the time of action brought; which omission is considered a waiver of the objection on his part. It is this latter consideration which prevents the judgment from being erroneous; for the court is consequently not bound judicially to know the fact: and *68 hence it is that such judgment by a false name, or for a married woman or a dead person, cannot be reversed or impaired, by writ of error or any other proceeding whatever.
On the other hand an abatement de facto, for matter of abatement occurring after the commencement of the suit, rests on a somewhat different principle. I need only notice the case of death of the plaintiff or defendant after action brought. In such case the action, though well brought, cannot properly proceed when one of the parties has become extinct. The objection may come from either side, at any stage of the cause, and need not be pleaded in any shape or form. It is equally incumbent on both sides to give information of the fact to the court; and it is at their peril that those who conduct the demand or the defence take judgment for or against the dead party. To give effect, however, to the abatement, it must be declared by the act of the court; for though, in the language of the books, the cause is abated de facto, yet the abatement must be judicially pronounced. But whether so pronounced or not, it is equally error to render judgment for or against a dead man. If the death appears upori the face of the record, it is error in law ; if it does not so appear, it is error in fact: and in either case the judgment may be reversed by writ of error; in the former, by a writ of error in an appellate court; in the latter, by a writ of error coram nobis in the same court.
Such is the uniform rule of the common law in abatements de facto by the death of a party pending the action, at any time before final judgment. It applies to all cases, whether before or after a decision upon the merits, whether the cause of action does or does not survive to the representatives of the deceased party, and whether the death be that of a sole plaintiff or defendant, or of one of several joint plaintiffs or defendants. In these respects the rule has been modified *69 by statutory provisions, but not so as to affect the principle upon which the doctrine rests. By statute 17 Car. 2. ch. 8. § 1. (substantially adopted into our code) the death of either party between verdict and judgment shall not be alleged for error. Upon the construction of this statute, and by the express provision of ours, the judgment is entered for or against the party as though he were alive. 2 Tidd’s Pract. 848.1024. 1 Rev. Code, ch. 128. § 38. p. 498. Hence the necessity of reviving the judgment by scire facias before execution can be sued out upon it. Earl v. Brown, 1 Wils. 302. For as the judgment is general for or against the party as if he were living at the time it was entered, so the scire facias must follow the judgment, and recite it as if it had been entered in his lifetime. 2 Wms. Saund. 72 l. By the statute 8 and 9 Will. 3. ch. 11. § 6. if the plaintiff or defendant happen to die after interlocutory and before final judgment, the action shall not abate, if originally maintainable by or against the executors or administrators of the party dying, but may be revived by scire facias. Our statute 1 Rev. Code, ch. 128. § 38. p. 497. is in conformity with this, but broader, as it extends to death at any time before verdict rendered. Though the statute provides that the action shall not abate, it of course means that it shall not abate so as to be incapable of revival; and does not authorize a judgment for or against the dead man, (which would be as much error as it was before,) but for or against his executors or administrators after revival by scire facias. 2 Tidd’s Pract. 1027. And by the same statute of Will. 3. § 6. which ours pursues (1 Rev. Code p. 498.) if there be two or more plaintiffs or defendants in a personal action and one or more of them die, if the cause of action shall survive to the surviving plaintiff or plaintiffs or against the surviving defendant or defendants, the writ or action shall not be thereby abated ; but such death being suggested upon the record, the *70 action shall proceed at the suit of the surviving plaintiff or plaintiffs against the surviving defendant or defendants. Such was, in most cases, the rule of the corntnon law before the statute; and it was error before, as ^ *s s*nce> to §'lve judgment for or against any one of the joint plaintiffs or defendants who may have died. 3 Bac. Abr. 11. title Abatement, letter F.
But though it is error to render judgment for or against a party who has died pending the action, it by no means follows that the judgment is void. On the contrary, it is valid and effectual to all intents and purposes until reversed by a writ of error, and can be in no wise impeached or impaired in any supplemental or collateral proceeding. In Jourden v. Denny, 2 Bulstrode 241. in which such a judgment was reversed, Coke said, “If judgment be given against a dead person, this is not void, but to be reversed by a writ of error, for there ought to be a court, a plaintiff, and a defendant; nominatim,, that it is not to be avoided by averment, but by a writ of error.” The estoppel is not so extensive as in the case of death before action brought; for there, as already stated, even a writ of error is precluded. But it repels all averment or evidence (except by writ of error) of an essential fact, virtually affirmed by the judgment; to wit, the continued existence, at the time, of the party for or against whom the judgment was rendered. The estoppel, however, is only in support of the judgment, and does not obstruct its most convenient and beneficial execution. The judgment may therefore be revived for or against the representative of the deceased party, by a scire facias suggesting the death subsequently to the judgment; which suggestion the estoppel prevents from being traversed, for that would be equivalent to an averment that it occurred before. But a.scire facias is not at all essential, and execution, if in due time, may be sued out in the names of the parties on the record. *71 Nor is there any practical inconvenience in this, as may be inferred from the rules authorizing the levy &c. of a fi. fa. notwithstanding the death of either party after it has been sued out or tested. 1 Rob. Pract. 511. 1 Wm. Saund. 219/
That there can be no averment or evidence of the death before judgment of a party for or against whom it was rendered, in any supplemental or collateral proceeding, whether it be a new action, or a scire facias to obtain execution, or consequently in avoidance of execution, is very clear upon authority. In 1 Rolle’s Abr. 742. the following strong cases are put: “ If the tenant in a cui in vita dies seized pending the writ; and, after, judgment is given against him, which is erroneous; and, after, the recoveror sues execution against the heir, and he brings an assize; he shall not avoid this judgment against his father, by saying that his father died pending the writ; for the judgment is not void, but only voidable.”—“ If a man recover in an ejectione firmce, and then his executor sue execution per scire facias against the recoveree, the recoveree cannot avoid the judgment, nor stay execution, by sa}ring that the testator died between verdict and judgment, or the like, but is put to his writ of error : and by the claries, such pleas have been divers times disallowed.”—“ So if a man recover land in any real action, and then sue execution against the heir of the recover ee per scire facias, it is no plea for the heir to say that his father died pending the writ, but he is put to his writ of error.”—“If a man recover against the principal, and sue a scire facias against the bail, they cannot say that the principal died before judgment, for that is to avoid the judgment by plea which is contrary to the record.” It is correctly stated in 1 Rob. Pract. 585. (in conformity with the decision in M’Farland v. Irwin, 8 Johns. R. 78.) as a settled rule, that the defendant cannot plead any matter to a scire facias on a judgment, which he might *72 have pleaded to the original action, or which existed prior to the judgment. In West v. Sutton, 2 Ld. Raym. 853. the case was this : “ The plaintiff sued out a scire facias upon a judgment in assize obtained against the defendant for the office of marshal in the king’s bench. The defendant pleaded in abatement that the plaintiff was an alien enemy &c. But by the whole court, the plea is ill, because this matter ought to have been pleaded in the original action.” It appears from 1 Bac. Abr. 184. title Aliens, letter E. that it might have been so pleaded, either in abatement or in bar; and from De Bret v. Papillon, 4 East 502. that if the plaintiff had become an alien enemy after the action brought, it need not have been pleaded at all, but there might have been a judgment against him on that ground without plea.
Thus it will be seen that according to the principles of the common law, a disability of the plaintiff to prosecute his action, whether occurring before or after its commencement, cannot be relied upon after judgment as a defence against the process of execution. It is in vain to argue that the disability is a general one embracing all process whether before or after the judgment, and that it is no good objection to the evidence that it proves a continued disability, extending before as well as after. The answer is that the disability is not a substantive fact, but a consequence of the fact of death, natural or legal, which must have occurred at a precise period of time; that the estoppel excludes proof of its having occurred at a date prior to the judgment; and that its occurrence since is in the very teeth of the evidence. The argument was overruled in Lambert v. Cameret, coram Holt, C. J. at nisi prius, Comberbach’s R. 446. In that case, it is true, the death occurred before action brought; but the principle is the same where it occurs pending the action ; the only difference, as already shewn, being, that in the former the estoppel is *73 inclusive, and in the latter exclusive, in regard to a writ ,• , ° , . of error. 1 he case was this : “ An action was brought in K. B. in the name of Cameret against Lambert, and verdict and judgment for the plaintiff in that action : now Lambert brings a writ of error coram vobis, and assigns error in fact that Cameret died before the trial of that issue, viz. tali die &c. The defendant in error, per A. B. attornat. suum, saith that he was alive, et adhuc in plena vita existit; et hoc petit quod inquire tur per patriam. And now the plaintiff in error {Lambert) gives in evidence that the defendant in error {Cameret), being a seaman, died several years ago, before the action brought. Holt said, Here you are estopped to give in evidence the plaintiff’s {Cameret’s) death before the principal action brought, for then by your plea you admitted him to be alive. Sir B. Shower pro qucr. in err. We are indeed estopped to plead that he died before the action brought; but sure we may give it in evidence, for if he were dead before the action, he must needs be dead before the trial. Holt, C. J. contra: You are estopped in evidence. But here the defendant in error saying, et adhuc in plena vita existit, et hoc &e. seems to have let the plaintiff in error loose from the estoppel; whereas if he had said, absque hoc that he died between the action brought and the trial, he would have hampered him.” The drift of the case is, that the continued disability consequent upon death cannot be relied upon in evidence, where the fact of death at a given period is within the range of the estoppel: unless, indeed, the estoppel has been waived by bad pleading.
These principles of the common law must govern the case before us. The charter of the bank expired pending the action, and before the rendition of the judgment upon which the process in question issued. The extinction of a corporation by efHux of time cannot be distinguished, as regards disability, from that of an individual by death. Both are placed upon the same *74 footing by Tucker, P. delivering the opinion of the court in Rider v. The Union Factory, 7 Leigh 154. arid by judge Stanard, delivering the opinion of the court in The Bank of Alexandria v. Patton &c. 1 Rob. 499. The est0PPel of the judgment is equally applicable to both cases. Seé the remarks of the chancellor in the New York court of errors, in Williams v. Bank of Michigan, 7 Wend. 541-2. upon the case of Henriques v. Dutch West India Company, 2 Ld. Raym. 1532. in which he shews, that where a judgment has been recovered in the name of a corporation, the corporate existence of the plaintiffs cannot be denied upon a scire facias against the bail.
The circumstance that the expiration of the charter was between the verdict and the final judgment cannot influence this question ; for the statute of 17 Car. 2. ch. 8. § 1. already noticed, has no bearing upon the present case. By that statute (1 Bac. Abr. 12. title Abatement, letter F.) it is enacted, “ that in all actions., personal, real or mixed, the death of either of the parties between verdict and judgment shall not be alleged for error;” and by ours, in accordance with it, (1 Rev. Code 498.) “ in all actions, real, personal or mixed, if either party should die between verdict and judgment, such death shall not be pleaded in abatement, but judgment shall be entered as if both parties were living.” The terms of this statutory provision, it will be seen, are only applicable to the natural death of an individual, and do not embrace the expiration of an incorporated company. There is no construction according to the spirit or equity of the statute, which would extend it to the present case. The spirit of the statute was to prevent the action from being defeated after a decision upon the merits, even in cases where the right of action dies with the person ; and this was accomplished by making a death between verdict and judgment, in point of law, and against the fact, a death after judgment, so as there *75 by to authorize a revival for or against the representative of the deceased party. But to extend the statute to corporations would be to produce directly the opposite effect, namely, to defeat the action after a decision upon the merits; inasmuch as there can be no representative of an expired corporation, and of course no revival by scire facias. There is no equity in such a construction: on the contrary it is fraught with the grossest injustice, for the result is that the creditors and stockholders of the expired corporation are deprived of all redress, though the justice of the corporate demand has been established by the verdict of a jury. To bring about such a result by the construction of a statute beyond its letter, would be an utter perversion of all reason and justice. I am not aware of any authority which, by a freedom of construction, has extended the provision of the statute beyond its express terms. On the contrary, the statute 8 and 9 Will. 3. ch. 11. § 6. authorizing a revival in case of death after interlocutory and before final judgment, has been held not to extend to cases where the parly dies before interlocutory judgment, though after the expiration of the rule to plead. Wallop v. Irwin, 1 Wils. 315.
The cause of the defendants is not at all aided by the proceedings which were had on the supersedeas to the original judgment in their favour upon the special verdict. The effect of those proceedings was to suspend and reverse that judgment, and produce a judgment de novo in favour of the plaintiffs. The original judgment was rendered in October 1831: the bank obtained a supersedeas thereto in June 1832: the charter expired in January 1835: the supersedeas was heard in April 1837; when this court reversed the judgment, and proceeding to give such judgment as the circuit court ought to have rendered, gave judgment for the plaintiffs for the debt demanded &c. which judgment was entered in the circuit court in May 1837. This *76 judgment, rendered after the expiration of the charter, notwithstanding affirmed the then continued existence of the bank. It was a judgment de novo, having no relation to any period antecedent to its date. A judgment; affirmance relates to the time of the judgment affirmed, by removing the objections to it and establishing its original validity. A simple judgment of reversal has a like relation, by destroying the judgment revérsed, and rendering it utterly null and void from the beginning. But a judgment de novo for the appellant, upon reversal of the adverse judgment, has no connexion in point of time with the latter.
That the final judgment thus recovered by the plaintiff is not liable to contradiction, either directly or indirectly, nor to reversal by a writ of error, having been rendered by the highest judicial tribunal, is not a subject for regret, as it works no injustice. If the defendants are without remedy, it is because they have sustained no wrong. This alone would be a sufficient answer to the ancient writ of audita querela, which is an equitable action to be relieved from some oppression or injustice in the proceedings, where the party has had no day in court, nor can have a writ of error. 2 Wms. Saund. 148 a. b. c. 3 Bac. Abr. 56. Error. A. 1 Id. 424. Much less can the party avail himself of the modern substitute by motion, where the execution is in due time, is in conformity with the judgment, and there has been no abuse of that process, nor release or discharge of the demand. If the court, under such circumstances, could have the power to quash on motion, it would assuredly be merely discretionary; and it would be a strange exercise of discretion to sustain the motion in a case like this. Even before judgment the court, after a decision upon the merits, may refuse to arrest the proceedings on the ground of a supervening disability, upon the authority of Vanbrynen & others v. Wilson, 9 East 321. in which case the plaintiffs had become *77 alien enemies since the verdict, but the court refused to stay the judgment and execution, saying, if the defendant had any remedy at law, he might avail himself of it. Arguments founded on the supposed disability on the part of the plaintiffs, after the money shall have been made by the execution, to coerce payment of it from the ministerial officer, or others into whose hands it may come, can avail the defendants nothing. That is a matter in which they have no concern. All they have to do is to pay this honest debt to the proper officer of the law, without troubling themselves about its ulterior disposition ; leaving it, if there be any difficulty, to the vigilance of the legislature to devise, or the astuteness of the courts to ascertain, an adequate remedy for an undoubted right, by which those entitled in the stead of the bank, as creditors, stockholders or purchasers, may make the fund available. In truth, however, in the present case, there is no difficulty in this matter; for it appears from the record on the original appeal, that after the judgment for the defendants, before the expiration of the charter and before the supersedeas was awarded, the bank assigned its demand to Edward B. Hicks; for whose benefit the execution on the final judgment for the plaintiffs has been endorsed by the clerk, as appears from the record on the present appeal. His right therefore to receive the money when made upon the execution, cannot, I presume, be doubted. On the other hand, if the process of execution upon the judgment be defeated, he will be driven, and that by a mere technicality, to the tedious, uncertain and precarious remedy of a new action or a bill in equity. And what can be more technical than a distinction founded upon the mere circumstance that the assignee is not the formal, but only the substantial plaintiff, for whose benefit the execution is endorsed, who has a right to control it, and who is entitled to its proceeds ?
*78 I have said that the final judgment in the cause affirmed the continued existence of the bank at the time of its rendition. I do not thereby mean the continued existence of the charter ; which is evidence of the fact, h,ut not the fact itself. The fact itself is a legal conelusion, compounded of law and fact. A corporation may have a legal existence notwithstanding the expiration of its charter. The legislature may thereafter confer it for a particular purpose, such as the recovery by suit of its just demands; or a judicial tribunal may infer such remaining capacity, however erroneously, from common law principles. The legal conclusion of the judgment overrules all conflicting evidence and argument. And evidence of the expiration of the charter before the judgment was rendered either disproves the then legal existence of the bank, or it does not: if the former, it is inadmissible, if the latter, unavailing, as a defence against the execution of the judgment. The strongest evidence after judgment, against the existence of the bank before, amounts to nothing; for it has to encounter every intendment of law and fact to the contrary, and if that were not so, every intendment of an adjudication against both law and fact; and either way the result is decisive. After judgment, the defendants can only be permitted to prove a supervening disability; and that is not pretended. This defence after judgment is in truth a renewal, in part, of that which was made before. Suppose it appeared from the record, that the defendants, pending the cause, had, by plea or motion to abate the action, alleged the extinction of the bank by expiration of the charter, and that the court overruled the objection, because such was not the fair construction of the charter, or of the act supplemental thereto, or because in its opinion a suit does not abate by the expiration of the charter; could the same question be renewed after judgment, by *79 a plea to the forthcoming bond, or a motion to quash , , . ,, , ^ the execution r And this is substantially the true state of the case. The statutes of N. Carolina establishing the bank and. constituting its charter were set forth in the special verdict; and thus presented directly the question, whether judgment could be rendered for the plaintiffs after the expiration of the charter. We may not know whether the question was presented in argument at the bar, or not. It is enough that it was presented by the record, and of course adjudicated by the court. This is indeed more than enough; for the effect of the judgment would have been precisely the same, whether the question had appeared on the record or not; since a judgment precludes all questions against its effect and operation, not only which were, but which might have been made in the cause. And if a plaintiff be competent to recover judgment, I cannot understand how, things remaining the same, he can be incompetent to obtain execution to enforce it. I presume it would hardly be contended that an estoppel must be pleaded and cannot be relied upon against the evidence, where the defence is not by pleading, but by evidence only ; or that it is to be disfavoured where it goes to sustain the merits of the cause.
The obstacles suggested in argument to suing out the process of execution, for want of the agency of some one authorized to act for the plaintiffs, seem to me merely imaginary. The authority of the attorney at law recovering the judgment is not extinguished by the demise of his client: the assignee entitled to the money has a right to issue and control the execution : and after the execution has issued, as in the present case, it is surely not competent for the defendants to allege that it was not issued by the plaintiffs.
I am wholly at a loss to perceive how, in a case like this, the regularity of the execution can be impeached, without impeaching the validity of the judgment, at *80 least for the purpose of execution; and if it be not good for that purpose, it is good for nothing as a judgment in the cause, being incapable, from its very nature, of revival, and if not wholly nugatory, utterly abortive so far as regards the powers of the court which © ^ r rendered it. Such a judgment would, to my mind, be extremely anomalous.
If the doctrine of the appellants be correct, it is very remarkable that no case has been produced by their learned counsel, and I presume none can be found, in which an execution has been quashed on the ground of the demise of the plaintiff before judgment, or in which an audita querela was sued out to prevent or set aside an execution on that ground; and that the writ of error should in such cases be the habitual and only recognized remedy. . To tolerate such á practice would, I apprehend, impair much the force and dignity of judgments, and not unfrequently lead to the renewal of controversies already had in the action, or a reservation of them till after an unsuccessful trial upon the merits; controversies which might sometimes involve questions of law and fact extremely troublesome and perplexing, occasioning great delay (as in the present case) in what ought to be the final administration of justice, and wholly unfit for the informal and summary remedy by motion. On the other hand, I cannot perceive any inconvenience in repelling such tardy efforts in abatement, or that doing so could occasion injustice in any imaginable case.
It will be seen that the whole argument against the regularity of the execution, in whatever form or shape presented, turns upon the assumption of the expiration of the charter more than two years before the rendition of the judgment; and if I have succeeded in shewing that evidence of the fact is inadmissible, or if admitted avails nothing, against the effect and operation of the judgment, then there is, as I conceive, an end of the *81 question. There is no foundation iu authority for the ..... , . , idea that it is necessary, under any circumstances, to sue out a scire facias after judgment, because of matter which occurred befoie. The rule relative to riage or death, and formerly but not now to bankruptcy, that where a new'person is to be benefited or charged by the execution of a judgment, there ought to be a scire facias to make him a party to the judgment, (2 Tidd’s Pract. 1021. 2 Archb. Pract. 93.) applies,ex vi termini, only to cases where the new interest accrues after the judgment, and not where it accrues before. The change of interest (where it operates at all), when before judgment, goes to the action, and when after judgment, to the execution. And the rule never applied to assignment by act of the party, whether before or during the action, or after judgment. The statute 17 Car. 2. ch. 8. it is true, in case of the natural death of a parly between verdict and judgment, renders a scire facias, not by express terms but by necessary consequence, indispensable; because it makes what was at common law a death before judgment, a death after judgment. But it by no means follows that at common law, where a party died before the action, or pending the action, whether after or before verdict, a scire facias was necessary to have execution. If it had been, it is strange that there is no case at common law to that effect, and that the question should never have arisen until and upon the statute. In truth, at common law there could be, pending the action, no scire facias upon a death before judgment, because the action abated; and it would be remarkable if that which, before judgment, could not be employed to revive the action, should, upon the identical fact, become indispensable afterwards to revive the judgment. Suppose the scire facias should state truly, that the party died before the action, or before the judgment; could it be sustained on demurrer ? And does the law require that the scire *82 facias should suggest falsely a death after judgment, when in truth it occurred before ? Again, if it be true, as suggested in the case of Rider v. The Union Factory, that upon the extinction of a corporation its personal estate §oes t0 *-he commonwealth, it furnishes no reason for quashing an execution upon a judgment obtained by the corporation during its legal existence (as in this case the judgment itself establishes), but the reverse, for it would deprive the commonwealth of that remedy; and surely it can have no application to a case where the debt wras assigned by the corporation before its extinction.
Thus, according to my view of the subject, where an execution is in due time and conforms to the judgment, it cannot be abated for any matter which occurred before. That the judgment of this court for the plaintiffs upon the special verdict was the final judgment in the cause, I think there can be no room to question. The writ of error, it is true, is a new action; but it is brought to have the proper judgment. “ Where a judgment is given for the plaintiff, and the defendant brings error, there shall only be judgment to reverse the former judgment; for the suit is only to be eased and discharged of that judgment: but where the plaintiff brings error, the judgment shall not only be a reversal, but the court shall also give such judgment as the court below should have given ; for his writ of error is to revive the first cause of action, and to recover what he ought to have recovered by the first suit, wherein erroneous judgment was given.” Parker v. Harris, 1 Salk. 262. And where the judgment of the court below is against the plaintiff on a special verdict by which the debt or damages are ascertained, (as in this case,) the appellate court, in case of reversal, gives a new and complete judgment for the plaintiff to recover the debt or damages. 2 Wms. Saund. 101 x. Where the damages are not assessed, the judgment is of course in *83 terlocutory; and a writ of enquiry is not only awarded by the king’s bench when that is the appellate court, and the subsequent proceedings had there, but, being also a court of original cognizance, the execution issues from that court, as it does where the first judgment was final. Ibid, and 101 z. 1 Rob. Pract. 673. And so by our practice and statute law, the court of appeals renders, on such reversal, such judgment final or interlocutory as the court below ought to have rendered, and its judgment may be entered by the clerk below in vacation as well as in term time, and if final, execution in either event may be sued out thereupon. 1 Rob. Pract. 672. There can be no doubt, therefore, that the judgment of this court was the final judgment between the parties, though repeated by the circuit court upon the remittitur, and though the execution issued from the court below, as it does in England when the appellate judgment is in the house of lords or exchequer chamber; in which respect, and in regard to the proceedings after an interlocutory judgment, this court, not being a court of original cognizance, is governed by the rules which prevail in the courts last mentioned.
The judgment of this court was not the less final, because the charter of the bank expired pending the writ of error. If, for that or any other reason, this court had abated the appellate suit, such abatement would not have extended to the original action, which was determined by the judgment therein; and the only effect of the abatement would have been to extinguish the supersedeas, leaving the judgment to which the writ of error had been granted in full force. But the appellate cause was not abated, and could not be, however strong-the reason, without the order of this court. This court, instead of directing an abatement, proceeded to hear and decide the cause; reversed the judgment of the court below; and gave a new and complete judgment for the plaintiffs. That judgment has the same effect and op *84 eration, whether it was right or wrong: and if it could even be regarded as a mere mandate to the court below to proceed to final judgment between the proper parlies, the result would not be different; for the cir-cu’t cour,: ^as Proceeded to final judgment, in conformity, as it conceived, to such mandate; and if not between the proper parties, that is error for which the judgment can only be impeached by writ of error. If neither the judgment of this court for the plaintiffs, nor that of the circuit court in conformity therewith, is to be regarded as the final judgment, I am utterly at a loss to understand what is the present condition of the cause; and if either be the final judgment, what authority or control can now be exercised over it by the circuit court.
But I cannot doubt that the course of this court in declining or omitting to abate the writ of error, and proceeding, after reversing the judgment for the defendants, to final judgment for the plaintiffs, was perfectly correct; nor can I conceive how it can be regarded otherwise, without repudiating the principles recognized in the case of The Bank of Alexandria v. Patton &c. above cited. In that case a bill in equity was filed by the bank, to set aside a voluntary conveyance made by its debtor, and subject the property conveyed to the satisfaction of its demand. The chancellor, upon a hearing of the merits, dismissed the bill of the plaintiffs, who appealed, to this court. Pending the appeal, the charter of the bank expired, and the appellees moved the court, on that ground, to abate the appeal. But it being conceded that the bank, pending the original suit, and before the expiration of the charter, had made an assignment of its claim, this court refused to abate the appeal, and proceeded to hear and decide the cause. The decree of the chancellor was affirmed; but if it had been reversed, then this court, in its discretion, would have given the proper relief upon the merits, or *85 settled the principles of the cause, and remanded it for further proceedings in the court below. The reasons for the decision will be found stated in the opinion of judge Stanard, in which a majority of the other judges curred. It was by that opinion held, that in Virgin a writ of error or appeal in no case abates by the death of either party, where the cause is capable of being revived for or against his representatives; that the established rule in such cases requires the revival of the appellate cause by scire facias; that where, upon the extinction of one of the parties, as of a corporation by expiration of its charter, there is no legal representative or successor for or against whom the appellate cause can be revived, the court will, upon the principles and authority of Rider v. The Union Factory above cited, abate the writ of error or appeal, unless it appear that the rights involved in the cause passed by assignment to living persons before the legal extinction of the party on the record, in which case the court, to prevent a failure of justice, will not abate the writ of error or appeal, but proceed to a hearing, and a judgment or decree, between the parties on the record. It will be seen that the present case and the one cited were, in regard to the preliminary question, precisely the same; except that one was an action at law, and the other a suit in equity. The ruling principle of both was to remove a formal impediment to the administration of justice. This was to be accomplished, in the first place, by refusing to abate the appeal, and examining the merits of the cause; and if the merits should be ascertained to be in favour of the appellant, then by proceedings adapted to the respective forums. The plastic powers of a court of equity allow the introduction of the equitable claimant as a party in the cause, and suggest the remanding of the suit to the court below, after settling its merits, to enable him to become the plaintiff by a supplemental bill. The more *86 rigid rules of a legal forum do npt permit this, and require the progress to final judgment and execution in the name of the formal party. This, and nothing more nor less, was the direct and inevitable effect of not bating the writ of error; unless, after overruling the abatement of the writ of error, and reversing the judgment of the court below, this court, in proceeding to give such judgment as that court ought to render, had abated the original action. This it ought to have done, if the bank was to be defeated by the expiration of its charter; and this it might have done upon the authority of Hook's adm'rs v. Hancock, 5 Munf. 549. There, in an action of slander, this court reversed the judgment rendered for the plaintiff in the court below, for error on the trial of the issue; and then abated the original action, on the ground that the defendant having died subsequently, the action no longer survived against his representatives. But instead of this course, which was obvious if this court intended to defeat the recovery, it rendered final judgment for the plaintiffs, to prevent the recovery from being defeated ; and now the effort of the defendants is to abate that judgment in effect, by preventing its execution. Such a course imputes to this court a mere mockery of justice and an utter trifling with its own authority. With judicial knowledge of the fact that the charter of the bank had expired, it renders a direct, peremptory and unconditional judgment for the recovery of the debt, interest and costs ; foreseeing that this exercise of its supreme power was to be disregarded and set at nought by the very court whose judgment it had reversed; and thus deciding, in one and the same breath, that the recovery should not and should be defeated, or that its own conscious error should be corrected by the summary and informal action of the subordinate jurisdiction.
I will not say that where a party dies pending an appeal, in a case capable of revival, and the cause not *87 withstanding by inadvertence passes through the appeliate court without revival, it may not still be revived in the court below, upon the remittitur. I believe the practice in the circuit courts is otherwise, and very properly so. But where the suit is incapable of revival, and the demise of the party appears to the appellate court upon the-record, or is made to appear by extrinsic evidence, and that court, without abating the appeal, proceeds to reverse the judgment, and then, instead of abating the action, proceeds to a final judgment de novo in the cause, I consider it beyond the power of the court below to impose the impracticable condition of revival, or in any wise to defeat or obstruct the execution of the judgment. In the present case the appellate court, in rendering final judgment, was not confined to the consideration of what judgment the court below ought to have rendered at the time of the action of that court, independently of that which ought yet io be rendered ; but being bound by its own recognized doctrine to consider the question of abatement, had to regard all proper evidence on the subject, whether furnished by the record, or evidence aliunde. And here it was furnished by the record, shewing upon its face the expiration of the charter; and no countervailing evidence, such as a subsequent enabling statute, was offered, as there might have been; for, as was held by the opinion delivered in The Bank of Alexandria v. Patton &c. such incidental questions are open to enquiry by the requisite means. The case, to my mind, stands precisely upon the same footing as if it had never been taken to the appellate court, and judgment had been rendered for the plaintiffs by the circuit court after the expiration of the charier.—I think this plea in abatement comes too late.
The view of the subject thus presented renders it unnecessary to consider the objections taken by the appellee’s counsel to the mode of presenting and reserv *88 ing the question in the court below. And it surely cannot be necessary, upon the other supposed error alleged by the appellants, to wit, that the execution was irreguiar in embracing two of the defendants who had died ^e^ore the judgment, to say more, than that it was not the less a judgment against those defendants, and as the execution conforms to the judgment, it is an objection which goes to the latter, and not to the former: and the rule is perfectly well settled, that the execution must embrace all the defendants named in the judgment, though some of them have died, and the officer proceeds upon the execution as if the names of the decedents were not included therein. 1 Rob. Pract. 575.
My opinion is that there is no error in the judgment of the circuit court, overruling the motion to quash the first execution and the forthcoming bond, and awarding execution upon the bond.
Allen, J.
The authorities bearing on the questions presented by this case have been fully reviewed by judge Baldwin. They clearly establish, that where matter in abatement existed prior to the suit, advantage must be taken of it by plea in proper time, and that after judgment the party is estopped, and cannot avail himself of it by a writ of error: and that where such matter occurs pending the suit, if not suggested or brought to the notice of the court before judgment, though a writ of error coram nobis in some cases may be prosecuted, the judgment until reversed estops the party from alleging the fact. And as a consequence from these principles, in all proceedings based upon the judgment and tending to enforce it, the party is concluded from availing himself of this error in the judgment. Thus the scire facias to revive is a mere continuance of the proceedings, and it is not competent for the heir or personal representative of the original defendant to set up his death before judgment, in *89 order to defeat the plaintiff. The judgment unreversed has established the fact to be otherwise. And hence the well settled rule, that the defendant cannot plead any matter to the scire facias on a judgment, which he might have pleaded to the original action, or which ex-isled prior to the judgment. So in a scire facias upon a recognizance of bail, the bail cannot require evidence of that which was necessary to entitle the plaintiff to recover in the original action, because the scire facias is a continuance of the proceedings. That is the amount of the decision in Henriques v. The Dutch West India Co. 2 Ld. Raym. 1532. It was a proceeding on the recognizance of bail, and the plaintiffs were not required to produce proof of their incorporation ; but the reporter says he was informed by lord King, before whom the original action was tried, that on the trial of that case the proof was required. So with regard to alienagecand coverture, the disability is personal; but judgment having passed, the defendant is concluded; and the parlies continuing to exist, the execution follows the judgment. These principles, however, respect the validity and effect of the judgment, in a proceeding to enforce it, and based upon it: but their application to the question now under consideration is not so distinctly perceived. That respects the regularity of the process. If the state of facts existing at the time the process issued be such as to render it unlawful, the process is void. And this irregularity may frequently appear by extrinsic circumstances. As where the execution issues against a defendant who is dead, the death does not appear on the face of the writ, but appears by evidence aliunde. Woodcock v. Bennet, 1 Cowen 739.
It is argued, that to impeach the regularity of the execution, in a case like this, is to impeach- the judgment for the purpose of execution; and that as there can be no revival, if it be not good for that purpose, it is good for nothing in the cause. This might be con *90 ceded, and yet not affect the question. If by the comnaon law the debts of a corporation, either to or from it, are extinguished by its dissolution, (as laid down in Rider v. The Union Factory, 7 Leigh 156.) the fact that the debt is due by judgment cannot operate to save it. And if, by a renewal of its charter, it is restored to all its rights and liable for all its obligations, (2 Kyd on Corporations 516.) it may, when so renewed, revive and obtain the benefit of the judgment. If the personalty of an expired corporation goes to the commonwealth, or if there has been a valid assignment before the dissolution, in either case the judgment may be enforced, if not at law, by a proceeding in equity. And by whatever mode enforced, the judgment establishes conclusively the validity of the debt and the right of the party to recover, at the time of its rendition. With as much force it might be argued, that as at common law, and before a scire facias was given to revive after the year and day, there could be no revival, the judgment was of no validity. And yet in such case the judgment, in an action of debt upon it, cannot be assailed for any matter which might have been pleaded to the original action.
At common law, the death of a sole plaintiff or defendant abated the suit. 2 Tidd’s Pract. 1168. The statute of 17 Car. 2. ch. 8. provided that the death of either party between verdict and judgment should not be alleged for error. Under this statute, judgment is entered for or against the party as though he were alive. Weston v. James, 1 Salk. 42. But there must be a scire facias to revive it before execution. Earl v. Brown, 1 Wilson 302. In the case just cited, the plaintiff died after verdict and before judgment: judgment was entered and execution taken out, without any scire facias sued out by the plaintiff’s representative: and the whole court held, that though by the 17 Car. 2. ch. 8. the judgment was regularly entered, yet the fi. fa. is *91 sued irregularly, for there ought to have been a scire . Jr, f i ° it facias. That is a much stronger case than the one under consideration ; for the death of the plaintiff (a natural person) does not extinguish the debt. But the scire facias in that case is supposed to be rendered necessary by the statute of 17 Car. 2. because the judgment is general for or against the party as if he were living at the time it was entered, and the scire facias must follow the judgment, and recite it as if it had been entered in his lifetime. If, before the statute, a judgment were entered against or for a dead man, the same result would follow: the judgment, until reversed, would be evidence that the party was living ; the scire facias would so recite it; and the defendant would be estopped on the scire facias from shewing the contrary. That being the case, in what sense can it be contended that the statute rendered the scire facias necessary ? Where it authorizes a judgment to be entered as though the party were living, the same effect should be given to it as where the judgment was so entered erroneously. And if in the latter case an execution might have been taken out in the name of the parties on the record, a fortiori would such an execution have been regular where the judgment itself was legalized. The scire facias could only have been rendered necessary, because the common law required it, and the statute, whilst curing the error in the judgment, left the parties to their common law remedies to enforce it. And the case referred to is a decisive authority, that, by the common law, the judgment must be revived in the name of the proper representative. No case has been adduced establishing a contrary position. But we- have cases without number, deciding that if the plaintiff dies after judgment, there cannot be execution before a scire facias in the name of the representative. Com. Dig. title Pleader. 3 L 1. 1 Rolle’s Abr. 900. pi. 15. 20. But if the plaintiff dies after execution, in that case the she *92 riff may go on and levy the money, and if there be no executor or administrator, the money is to be brought into court. Thoroughgood’’s case, Noy’s Rep. 73. As between the parties, the execution has relation to its ieste, (Tidd’s Pract. 915.) and if tested before the party’s death, is regular, though issued afterwards. Oro. Car. 459. But if tested after the plaintiff’s death, it is irregular. Heapy v. Parris, 6 T. R. 368. How would this question so frequently have arisen, if, by the common law, execution might be sued out by or against a party where the death occurred before judgment? There could be no good reason for a distinction, whether the party died before or after the judgment, so far as the regularity of the process was involved. The rule which has always prevailed is'laid down in Pennoir v. Brace, 1 Salk. 319. that where a new person is to be better or worse by the execution, there must be a scire facias, because he is a stranger, to make him a party to the judgment; as in the case of an executor or administrator. And hence the necessity of a scire facias in all cases of death before execution. Here the corporation is extinct: that it cannot have benefit by the execution is evident: and whoever is to be the better for it, should in some form be brought into the case. If the forms of proceeding at law interpose difficulties, the party may have redress in equity.
If then there is no authority for the position assumed, that in case of death before judgment, a scire facias was not essential, and execution might be sued out in the names of the parties on the record ; but on the contrary the common law did, whenever there was such change of parties, require a scire facias; the whole argument derived from the doctrine of estoppel and the adjudication of the fact, falls to the ground. The estoppel applies only where the attempt is made to impeach the validity of the judgment for that cause. In such case the party is precluded by the judgment from *93 denying the fact. And that is the effect of the decision in Comberbach’s Rep. 446. The proceeding there was to reverse the judgment by writ of error coram vobis. The plaintiff having died before action brought, the defendant, by pleading to the action, waived the objection and admitted him to be alive. If therefore the plea to the assignment of error had simply averred that the plaintiff in the original action was alive at the time the action was brought, and relied upon the record, the plaintiff in error would have been estopped. But even that case proves that the technical estoppel must be pleaded in such way as to preclude the party from shewing the contrary. The defendant in error averred by his plea the continued existence of the party to the time of the judgment; and this let the plaintiff in error loose from the estoppel. He was permitted to shew by evidence that the party was dead at a time when, by the record, he was deemed to be alive; and by so doing, to avoid the judgment. But in a case where the judgment is not impeached; where the motion raises merely the question whether the process is irregular in itself or in the mode of issuing it, (a question to be determined with reference to the state of facts existing at the time the process issued), it would be carrying the doctrine of estoppel, and the intendment of an adjudication, to a great length, if the defendant is to be precluded from shewing that at that instant of time no party was in existence capable of suing out process, because such existing disability is a consequence of another fact, which occurred before final judgment.
The case of The Bank of Alexandria v. Patton &c. 1 Rob. 499. is supposed to have some bearing on this question. In that decision I concurred, for the reasons assigned in the opinion delivered, and also because I felt satisfied that in this court there was no necessity for a revivor in any case; that though it might be convenient, when a death occurred, to apprize the parties *94 interested of the pendency of an appeal, there was no absolute necessity for it, and it was the duty of this court, whenever justice required it, to determine the questions appearing on the record, and leave the par-*-ies t0 Proceec^ thereafter, as their interests might require and the law permit. The court held in that case, that before the act of 1806, appeals and writs of error did not abate by the death of either party, but his representative or the other party might revive by scire facias; and that even this practice did not require such revivor at the time of the judgment or decree of this court, if the death had occurred subsequent to the argument. The difficulty of proceeding in error unless there were existing parties, legal or natural, at the time of the hearing and judgment, was therefore not insuperable. When, as in that case, there was a suggestion that rights might be compromitled unless the decree, if erroneous, were removed out of the way, it was competent for the court to act on the decree in the name of the parties on the record. The power was considered essential to prevent injustice: and the case was put, of a decree or judgment of the court below in favour of the corporation against the appellant, and a subsequent dissolution of the corporation; when, if the appeal must necessarily be abated, the recovery would be left in force, and the appellant liable to be charged with it at the suit of an assignee. The court in the present case, in rendering judgment on the special verdict, decided upon the facts as there presented, and with reference to the time when presented. The correctness of the judgment of the inferior court was the matter for consideration : and on the facts as presented to that court, and passed upon by it, no impediment to a final judgment existed. The corporation was then in being, and entitled to recover. And this court, by its reversal, and the entry of such judgment as that court should have given, adjudicated that facL and nothing *95 more. Had the dissolution of the corporation been suggested here, and rights might have been compromitted on one side or the other by abating the appeal, this court, under the authority of The Bank of Alexandria v. Patton &c. would have refused to abate, and proceeded to render the judgment it did. It passed no judgment upon matters which supervened after the special verdict, and the judgment on it by the court below. Its action was confined to the correction of the error in that judgment, as of the time it was pronounced, without considering or deciding what would be the effect of any subsequent events upon the rights of the parties. The charter might have been renewed after the appeal; but this would be matter extrinsic to the record. In such case the appeal ought not to be abated. But if the rights of the parties are to be considered as determined as of the time of pronouncing the judgment in the appellate court, the court must, by abating the appeal, decide that the corporation has expired, or, if it notices the extrinsic evidence, the judgment would be rendered not upon the record as it came from the court below, but upon that in connexion with matter for the first time exhibited in this court.
The argument pressed upon us as to the merits of the case, and the inconvenience, is not entitled to much weight if the law is obligatory. But in truth, where is the inconvenience or hardship complained of ? If the corporation had expired by efflux of time after judgment, I presume there could be no pretence that an execution could issue in its name; for in that case, this technical doctrine of estoppel would not apply. There would be no judgment determining, against the fact, that that was existing which had ceased to exist. Yet in such case the judgment would remain, as in this, entitled to all the respect of a judgment, whenever enforced in a proper way by the party entitled to enforce it. But on the other hand, serious inconvenience, if *96 not gross injustice, might and probably would flow from establishing the principle contended for. Is any man who can succeed in inducing the clerk to issue an execution on a judgment standing in the name of an exP*rec^ corporation, to be permitted to enforce payment? If the sheriff collects the money, to whom is he to pay it ? It is suggested, that there is an assignee: but how is his right to be determined on an ex parte proceeding, without notice to any party interested in controverting his claim if erroneous? The debtor has an interest in seeing that the money he owes is paid into the proper hand. By requiring the party (whoever he may be) claiming to be entitled to the benefit of the judgment, to enforce it in the proper mode, the injustice which may be committed by permitting execution to issue in the name of the extinct corporation, is guarded against, and the rights of all secured.
It seems to me that the court should have overruled the motion for a judgment on the forthcoming bond, and quashed the execution.
Stanard, J.
It is not questioned that if a corporation becomes extinct by the expiration of the term of its corporate existence, pending a suit at law for a corporate demand, and that fact be brought regularly* un *97 der the judicial cognizance of the court in which the suit is pending, the action must terminate. It is equally free from doubt, that if, after judgment in favour of a corporation, the corporation becomes extinct by the expiration of the term of existence granted by the charter r ^ ° 4 J of incorporation, no execution on such judgment can regularly be sued out in the name of the corporation, and if one be issued, it is liable to be quashed, on shewing the fact of the extinction of the corporation before the emanation of the execution. On the other hand, I do not question that if an original judgment be rendered in favour of a corporation, as it could not regularly be rendered unless the existence of the corporation continued, the necessary intendment from the rendition of it is, that the then continued existence of the corporation was either proved or admitted; and if execution be sued on the judgment, the defendant, being by this intendment estopped to deny the existence at the time of the judgment, would not, on a motion to quash the execution, be admitted to controvert this intendment, and proof on such motion of the extinction of the corporation before judgment would be inadmissible or unavailing.
Assuming the foregoing propositions as unquestioned or unquestionable, the enquiry is, by which of them should the case in judgment be ruled ? The case that the record presents is that of a corporation plaintiff existing at the time of the original judgment in the court below, and at that time, according to the judgment of the court of appeals, entitled to judgment against the *98 defendants, but whose charter expired pending the proceedings and before the final judgment in error: and this expiration of its corporate existence is the matter alleged for quashing the execution which issued on that ju<^Sment* H the expiration of the charter of incorporation pending the proceedings in error, and the subsequent judgment in error notwithstanding that expiration, be properly assimilated to an original judgment after the expiration of the charter, then, according to the second assumed proposition, the judgment precludes the enquiry into the existence of the corporation at the time of its rendition ; and therefore forbids or nullifies the proof of the nonexistence of the corporation at the time of the judgment in error, and consequently at any antecedent time. The material question then is, can this assimilation be properly made ?
The principle on which the second proposition rests is, that the expiration of the charter before original judgment was a fact on which the defendant might have protected himself from the judgment, and if properly brought to the judicial cognizance of the court, would have denied to the court judicial capacity not only to render the judgment, but to proceed in the cause; and the legal intendment is, that the fact of the continued existence of the corporation was conceded or proved. Is such the predicament of the case in error ? Does the judgment in error necessarily import that the parties are existing at the time of its rendition, so as to create an estoppel to the denial of that fact, in proceedings in execution of the judgment? This enquiry must be answered in the negative. It has been the constant practice of this court, where natural persons are the litigant parties, to proceed to judgment as though such persons were living, if the death occurs between the argument of the case and the judgment, though the judgmenl be rendered months or even years after the death: and on the return of such a judgment *99 to the court below, it could hardly be contended that the successful party could proceed to have it executed without process of revivor in the court below. In the case of a corporation whose existence may have minated pending appeal or writ of error, and to which there is no legal succession nor can be a legal representative, but whose rights, at least in equity, may have passed to others by assignment for value during its existence, the appellate proceedings are continued to judgment or decree in the appellate court, irrespective of the fact that the corporate existence has terminated. Such was the decision of this court in the case of The Bank of Alexandria v. Patton &c. According to that decision, had the attempt been made, when this case was in the court of appeals, to arrest further proceedings in error, and thereby intercept the judgment that was rendered, on the ground that the charter of the corporation had expired, it would have been fruitless. The court would, notwithstanding such objection, have proceeded to a decision, and would have rendered such judgment as the court below ought to have rendered. As the expiration of the charter would not have prevented the rendition of the judgment, there cannot be a legal intendment of the then continued existence of the corporation from the rendition of the judgment, as in the case of an original judgment. The judgment in error, in respect to this question, has relation to the time of the judgment of the court below, being the judgment that ought to have been rendered by that court; and execution on that judgment, if sued out in the name of a party W’ho may have ceased to exist pending the appeal or writ of error, is as liable to be objected to on that ground, as it would be if the judgment on which it issued had been rendered by the court below when its original judgment was rendered. There can be no estoppel to the allegation and proof of the expiration of the charter and extinction of the *100 corporation, resulting from a judgment which, so far from implying either concession or proof of its existence at the time of its actual rendition, would have heen rendered though there had been the allegation and proof at that time its existence had terminated.
The evidence that was offered to shew that the corporation had ceased to exist at the time the execution issued in its name, was, I think, prima facie proof thereof, and, uncontrolled by other proof, ascertained-that fact: and that being ascertained, it established that the execution on which the forthcoming bond was taken issued irregularly, and the court ought to have overruled the motion for award of execution on the forthcoming bond, and to have sustained the motion to quash that execution and the bond taken under it. This would have left the judgment rendered by this court to the fate to which the extinction of the corporation consigned it. If any party, by virtue of a transfer from the corporation during its existence, was beneficially entitled to the avails of the judgment or the subject involved in the controversy, though that party could not have a legal remedy by suing out execution in the name of a nonentity, an expired corporation, I do not doubt that his equitable title would be protected by a court of equity, and his claim to the avails of the judgment enforced in that forum against the party chargeable.
Brooke, J.
I think the case of Rider v. The Union Factory, 7 Leigh 154. ought to govern this case, as I thought it ought to have governed the case of The Bank of Alexandria v. Patton &c. 1 Rob. 499. I differed from the rest of the court in the last mentioned case, because I could not see that an ex parte exhibition of a deed of assignment by the bank before the expiration of its charter, (not to be found in the record, and not noticed in the pleadings) could be made the ground *101 of decision in this court. The charter of the bank having expired, the assignment could not be contested here by that institution, nor by the defendants, who had no notice of it in the record. Had the bill been in the name of the assignees instead of the bank, that might have been a ground for relief though the charter had expired. In the present case, I cannot distinguish between the expiration of the charter of the state bank of North Carolina after the judgment of this court, and before it. In the former event, there could be no doubt that the motion on the forthcoming bond would be overruled, and the execution and bond quashed. Nor can I understand how the supposed estoppel of the judgment is to be availed of. It is said by the court in Rider v. The Union Factory, before referred to, that upon the expiration of its charter, a corporation can neither hold property, nor be responsible for any of its acts in the corporate character. It is a nonentity. As such, it can neither plead nor be impleaded. How then could the bank in the present case avail itself of the estoppel of the judgment? Where a natural person, party to a suit, has died before judgment, his representative, in a case like the one before us, might insist on the estoppel of the judgment: and all the cases that have been cited are of that character. I believe no case can be found, in which the court has applied the estoppel of a judgment so as to enforce the judgment, on behalf of a dead party having no representative before the court, against the defendant. In any view of the case, I think the motion on the forthcoming bond ought to have been abated, and the execution and bond quashed ; but without costs.
Judgment reversed, and execution and forthcoming bond quashed.

Note by the reporter. The ease of Agnew v. The Bank of Gettysburg, 2 Harr. & Gill 478. shews the necessity of bringing the fact before the court in a regular way. This was an action of assumpsit brought the 30th of July 1824 by the bank against Agnew, and the plea was the general issue. At the trial on the 15th of February 1826, the plaintiffs, to shew that when the suit was commenced they had a right to sue, gave in evidence letters patent whereby it appeared that at the time the suit was brought they were an existing corporation. But the same letters patent shewed that the charter was limited to the first day of April 3825, and so had expired between the time of bringing the suit and the time of trial. The defendant prayed the court to instruct the jury that from the evidence the plaintiffs were not entitled to recover. This instruction the court refused to give; and verdict and judg *97 ment being rendered against the defendant, he appealed. The court of appeals of Maryland was of opinion that the defendant could not, under the general issue, have given in evidence the dissolution of the charter subsequent to the institution of the suit; and this being so, that he could not be allowed to avail himself of the fact to nonsuit the plaintiffs, merely because it appeared in the letters patent which the plaintiffs were compelled to adduce. The court therefore affirmed the judgment.