## Case No. 13,665.

### The SWALLOW.

[Olc. 334.] [1]

District Court, S. D. New York. April 15, 1846.

SHIPPING—MASTER—WAGES—CUSTOM—HIRING FOR SEASON—ASSOCIATION OF OWNERS—INDIVIDUAL RESPONSIBILITY—INTEREST—STATE CLAIM.

1. Interest is allowed on liquidated demands in admiralty the same as at law, and on seamen's wages from the time they are due.

[Cited in The Grapeshot, Case No. 5,703.]

2. An association of separate owners of several steamboats into a joint concern, to run their vessels upon the Hudson river, and to collect and receive the earnings of the boats in a common fund, out of which the expenses of all the boats are to be paid, is no more than a private co-partnership in a particular business or transaction.

3. Each member of the association is responsible individually for his acts or contracts in the business of the common concern.

4. The custom with steamboat owners upon the Hudson river is, to hire masters, pilots and engineers for the season, at a yearly salary, payable in ten equal parts—the season for the purpose being understood to begin with March and end with December.

5. The master is entitled to recover a proportionate part of the salary when his services do not commence or terminate with the season.

6. Where a master of a boat who was hired by the owners in that manner for a succession of seasons, and during the period the vessel was chartered by the owner for a term ending on the first of January, and the master continued with her subsequently, without giving proof of any special contract of hiring and beginning actual service on board the first of March, it will be implied that the hiring was for the season according to usage, and that it commenced on the first of January and not the first of March.

7. The objection that a demand in suit is stale or barred by the statute of limitation, cannot be made without being properly stated in the pleadings.

[Cited in The Shady Side, 23 Fed. 732.]

The libellant [Alexander McLean] had been master of the steamboat Swallow a period of several years. She was a passenger vessel, owned by the respondents [Anthony N. Hoffman and Smith Cutter], making regular trips between New-York and Albany. This action was brought to recover wages alleged to be due him in that capacity, and also for moneys paid by him during the term to other persons on board, and in the service of the vessel. The libel claims wages in arrears in the years 1837, 1841, and 1843. The answer admits that one month's wages for July, 1837, $83 33, is due the libellant, and further that the services were rendered as alleged in the libel, but avers that the wages of the libellant were paid him in full by the respondents for the year 1843. That during the year 1841, the boat was in the employment of the Hudson River Association, who appointed the master on the nomination of the owners, and that his wages for that year are chargeable to the joint funds of the association, and not

1 [Reported by Richard Olcott, Esq.]

against the respondents individually. It asserts that the moneys paid to others on board by the libellant were overpayments, and not legally chargeable against the respondents.

Burr & Benedict, for libellant.
Mr. Hoffman, for claimants.

BETTS, District Judge. For the one month's wages admitted to be unpaid, there must, of course, be judgment for the libellant. He is also entitled to interest from the time the wages were payable. It is the rule of admiralty, as well as at law, to allow interest on liquidated claims from the time they are demanded, and on mariners' wages from the time they are due. Gammell v. Skinner [Case No. 5,210]; The Elizabeth Frith [Id. 4,361]. The preponderance of proof clearly is, that the libellant advanced one hundred and fifty dollars for the wages of part of the crew, during the month of July, 1837. This proof is also corroborated by the acts of one of the respondents, who presented the account as rendered by the libellant, to his co-associates in the employment of the boat, and urged its payment, as justly chargeable against them in common. This sum must accordingly be recovered by the libellant, with interest.

The main contestation in the cause has been in relation to the wages of the libellant for the months of January, February and March, 1841, and for two months in the year 1843, in all five months, amounting to $416 65. This amount the respondents contend they are not individually liable for, if due, but that it is chargeable to the Hudson River Association. The owners of several steamboats plying upon the Hudson river, of which the Swallow was one, entered into an association or joint arrangement, by which the earnings of the different boats were to be brought into a common fund, out of which the expenses of all the boats were to be paid by the association. Each owner was to equip and furnish his particular boat, and engage his crew, and nominate the master of the vessel, but the appointment of the master was to be made by the association. The Swallow was employed for a time under that engagement; but in the year 1841, her owners chartered or hired her to the association for a fixed price. The object was to reserve her as a supernumerary boat in the common business, and only run her in the place of any boat in the association that might happen to be disabled. In such case she was to be manned and navigated by the company of the disabled boat. This agreement was signed and entered into April 6th, 1841. When it went into operation, the libellant was in command of the Swallow, as he had been previously, (but not by appointment of the association,) and then retired from the command. The proofs show the uniform usage with owners of the Hudson river boats had been to hire their masters for the sea-

son, at a yearly salary, which was ordinarily paid in ten equal instalments, covering the period the boats were in service or preparing for it, or being laid up, and considered as beginning with March and ending with December, but not unfrequently the amount was divided into equal monthly payments.

It is clear, upon the evidence, that the libellant was entitled to $1,000 wages for the season, and at that rate for any period less than a season, when his services did not commence or terminate with it; and that the amount payable to him has not been satisfied by the respondents or the Hudson River Association. The main question in dispute is, whether his resort must be to the association, or if he can hold the owners of the boat responsible for the balance unpaid. So far as that question applies to the wages for 1843, the allegation of the respondents, that the full wages for that year have been paid, necessarily makes part of the defence to be considered. If the association had been composed of strangers to the respondents, wholly independent of any interest or influence in it on their part, that fact would afford no legal exemption from their individual liability to the master. He was hired by them as owners of the boat, and the services of the boat for the association nominally, was in effect to the benefit of the owners individually. They received from the common fund, created by the earnings of the associated boats, an equivalent for the earnings of their own. It was only a different method of collecting her earnings and defraying the charges upon them; or, to represent the operation in mercantile language, it was placing the freights of the vessel in the hands of trustees for the owners, who were to discharge the obligations of the vessel to the crew, and pay the surplus to her owners. Should the holder of freight refuse or neglect to pay the wages of the master, his resort to his owners therefor could in no way be prevented or impeded, because of the manner in which they employed the vessel. If they let her to a third party in solido, she still remains answerable for her owners' engagements in regard to her fitments or navigation. 2 Dod. 500; Bronde v. Haven [Case No. 1,924]; Cowp. 636. But there is a higher principle in the case which supplants the defence set up by the respondents. As owners of the boat, they composed a part of the association. It was, in relation to its operation and purposes, a private copartnership, and partners can never discharge themselves of liability for their individual debts by showing that the copartnership had assumed to pay them, and was supplied with funds for the purpose. The individual liability is not merged in that of a copartnership The questions mooted in respect to a personal or associate responsibility to creditors relate to liabilities imposed upon the whole by acts of separate members, and not to the exemption of individual members from responsibility for their own acts,

because a common obligation may also rest on others. 3 Kent, Comm. 24, 32; Williams v. Bank of Michigan, 7 Wend. 542; Colly. Partn. 625. The ratification of the appointment of the libellant as master of the boat by the association, does not affect his legal relation to the owners. Whether it gives an additional security against the associates conjointly, need not be considered, but clearly the owners who made the contract with him, and who had the benefit of his services, cannot exonerate themselves from paying the agreed wages, by showing that as to themselves there was an equity in his securing payment from their associates, and out of the joint fund. The disposition of that fund must be regulated between the common proprietors, and the respondents must look to their own trustees for indemnity against any injury they sustain from an improper application or withholding of their mutual funds. The owners deny there is a balance of wages due for 1843. The charter of the boat terminated with the year 1841, and the Hudson River Association has run no boats on their joint account since that date. The owners insist she did not come back to their particular possession and use until March, 1842, and that the hiring of the libellant by the year commenced at that period. It is shown that he received one thousand dollars during the year 1842 and early in 1843, and the argument is, that a year's wages, from March, 1842, to March, 1843, was thereby satisfied and discharged.

The libellant was appointed by the respondents in writing, master of the boat, in 1837. That appointment had not been revoked, and after the special hiring of the boat in 1841 to the association terminated, the libellant resumed the command of her, under the respondents alone. The libellant sailed her from the opening of the season in 1842, for the benefit of and on the hiring of the respondents. They give no proof that a different bargain was made with him for that service, and the implication that it was rendered upon the same terms with his previous employment, amounts to sufficient proof in his favor of the fact. There is no direct proof that the agreement with the master for 1842 was for the running season; but the notorious and universal usage or the Hudson river, and with the boats owned by this association was, that masters, pilots and engineers are hired and paid by the year, from January to January. And it is strongly corroborative of the presumption that the respondents recognised the custom in this instance and acted in conformity to it; that the engineer of the boat, this same period, from January, 1842, to January, 1843, was hired and paid by stated salary. In May, 1843, fifty dollars were paid the libellant, in full for the balance of his wages for 1842. The cashbook of the boat was produced by the respondents to show that the libellant's wages were there credited at one thousand dollars,

or one hundred dollars per month, beginning on the first of March. This book was not kept by the master, nor is it proved he had any knowledge of the terms of that entry. Such ex parte entry in the respondents' books is not adequate evidence to support the defence. It certainly can avail them no further than the receipt of May, 1843, drawn and signed by the master, stating that the money thus paid was applicable to his wages for 1842, can be made to support his claim.

On the facts in proof, the libellant, in my opinion, was entitled to wages from January 1st instead of March 1st, 1842, to January 1st, 1843, leaving a balance in his favor still unpaid. The testimony is not distinct as to the time the libellant remained in command and attached to the Swallow in 1841. I shall assume that he left her on the execution of the charter-party, and take that date to be April 1st, 1841, as it was proved that the arrangement was made before the contract was signed. He will accordingly, be entitled to one hundred dollars arrears of wages in 1841, two months wages in 1843, and one month in 1837. The credit for payments made for the boat in July 1837, and claimed by the libellant, is twenty dollars to Bates, the mail clerk; forty dollars to Lockwood, the second engineer; to ten firemen forty dollars, and ten deck hands fifty dollars—one hundred and fifty dollars. It is now denied that the libellant had authority to hire those men, or that he can charge the payments made them against the respondents. But I think, after rendering these demands to the association as being proper charges against the boat, and attempting to obtain their payment with interest, the respondents are precluded denying their obligation to satisfy them. The above statement of the claims varies a few dollars from the demand made in the libel, but I do not think it proper to order a reference on a difference of so small an amount.

I accordingly decree that the libellant recover against the respondents $150, with interest from August 1st. 1837; $83 33, with interest from January 1st. 1838; $209 99, with interest from January 1st, 1842, and $166 66, with interest from January 1st, 1844, together with costs to be taxed. The demand of payment of wages should be equitably implied to have been made at the close of each year's services, and that interest was due from the period the advances were made by the libellant for the respondents, and interest be computed accordingly. 7 Wend. 178; 15 Johns. 409; 2 Nott & McC. 493; 7 Wend. 109. The staleness of the claim for arrears due in 1837, and the expiration of more than six years since those payments, create no bar to the action. Independent of the state of the pleadings, which would exclude those defences, it is proved that demand of payment was made by the libellant upon the respondents in 1842.

Decree for the libellant according to the above directions.